FARMERS AND MERCHANTS BANK OF WILLIAMSTON v. GER-
MANIA LIFE INSURANCE COMPANY.

(Filed 25 May, 1909.)

1. Principal and Agent—Negotiable Instruments—"Kiting" Checks—
Purchaser—Lack of Authority—Notice Implied.

The "kiting" of checks from one bank to another, a method to
sustain a false credit at the banks or to temporarily raise funds,
will not be implied as being within the scope of the authority con-
ferred by a life insurance company upon its general State agent;
and a bank having actual or implied notice of such transactions
will be presumed to have knowledge of the agent's lack of au-
thority.

2. Principal and Agent—Negotiable Instruments—"Kiting" Checks—
Authority of Agent—Evidence—Questions for Jury.

When it appears that a general State agent of a life insurance
company has been "kiting" the company's checks between banks
for his individual purposes, and that one of these checks, pur-
chased by the plaintiff bank, was drawn by the cashier of the
insurance company to the general agent, and by him, as such,
endorsed for value, and when there is evidence that both the
cashier and general agent had authority to draw checks, and that
the bank was a purchaser without notice, the question of notice is
for the jury, and their finding the issue in the negative, under cor-
rect instructions, will not be disturbed on appeal, though the
greater weight of the evidence may be to the contrary.

3. Principal and Agent—Negotiable Instruments—"Kiting" Checks—
Authority of Agent—Evidence—Burden of Proof.

In an action to recover upon one of a series of "kiting" checks,
alleged to have been made by the cashier or general State agent
of an insurance company, under authority conferred by his com-
pany, and to have been acquired for value by the plaintiff, the
burden of proof is on plaintiff to show that the cashier or general
agent had the authority alleged.

4. Verdict Set Aside—Trial Court—Discretion—Preponderance of
Evidence—Exception to Verdict—Appeal and Error.

It is within the discretion of the trial judge to set a verdict
aside as being against the preponderance of the evidence, and this
question will not be considered on appeal upon exception to a ver-
dict and judgment thereon, at least in the absence of gross abuse
in the exercise of the discretion.

5. Issues Sufficient—Issues Tendered.

When the issues submitted to a jury are sufficient to present all
the controverted matters in the case, there is no error in refusing
issues tendered.

ACTION tried before *Biggs, J.,* and a jury, at June Term, 1907, of MARTIN.

Defendant appealed.

*H. W. Stubbs, Wheeler Martin, H. A. Gilliam* and *W. W. Clark* for plaintiff.

*J. W. Hinsdale* and *Shepherd & Shepherd* for defendant.

·WALKER, J.   This action was brought to recover $1,250, the amount of a check alleged to have been drawn by Lula Parham, cashier of the .defendant, on the Mercantile Bank of Memphis, Tenn., to the order of R. B. Hall, manager of the defendant, and endorsed by him for value to the plaintiff, and also the protest fee, $2.50, making, in all,. $1,252.50.   The check was presented to the bank on which it had been drawn and payment refused, whereupon it was protested for nonpayment.   The defendant denied its liability upon the ground that Lula Parham had no authority to .draw the check, and that it had received no benefit therefrom.   It further alleged that R. B. Hall, as manager, in August, 1906, opened an account with the plaintiff, in the defendant's name, but really for his own benefit, and for many months did a "kiting" business with the plaintiff, depositing with it checks and drafts on other parties, who owed him nothing, and making the same good by checks upon the plaintiff and others, the principal transactions in the way of "kiting" checks having been carried on between the said R. B. Hall, as manager, and the said Lula Parham, as cashier, of the defendant.

The court submitted to the jury two .issues, which, with the answers thereto, were as follows:

1. "Is the defendant indebted to the plaintiff?   If so, in what amount?"   Answer: "Two hundred and seventy-six dollars and forty-eight cents, with interest from 17 January, 1907."

2. "Upon what item of debit appearing in the account of the defendant company with the plaintiff bank was the credit balance of $976.02, dated 16 January, 1907, applied?"   Answer: "The $1,250-check in controversy."

The answer to the first issue was arrived at by deducting the "credit balance" of $976.02 from the amount of the check, with

the protest fee added, the plaintiff having charged the amount of the check to the defendant when payment of it was refused.

There was much evidence introduced tending to show that R. B. Hall, as manager, and Miss Parham, as cashier, of the defendant, were "kiting" checks in their dealings with the plaintiff bank, and while this evidence may be very strong and convincing, we do not think it was of such a conclusive nature as to require the court to instruct the jury, as requested to do by the defendant, that, as matter of law, it charged the defendant with notice of the fact, so as to defeat the plaintiff's recovery. Frank F. Fagan, cashier of the plaintiff bank, testified that he did not know Hall was "kiting" checks, nor did he know that there was anything wrong in his transactions with the bank. On 13 December, 1906, he wrote the following letter to the defendant:

"Mr. R. B. Hall, manager of your company at Raleigh, N. C., carries an account at this bank as R. B. Hall, manager Germania Life Insurance Company of New York. We desire to know if his signature to checks meets with your approval, and if the same is authorized by you. We also would like to know if the signature of Lula Parham, cashier Germania Life Insurance Company, to checks drawn on the Mercantile Bank of Memphis, Tenn., is authorized by you. As Mr. Hall is manager of your company for North Carolina and Tennessee, we presume that he has authority to sign your checks, but we desire this information for the files and records of our bank, and will very much appreciate a prompt reply.

"Yours truly,          FRANK F. FAGAN,<br>"<i>Cashier.</i>"

To this letter he received, 22 December, 1906, the following answer:

"GENTLEMEN:—We reply to yours of the 18th inst. in the affirmative, Mr. Hall and Miss Parham being authorized to draw checks, as indicated by you.

"Respectfully yours,          N. S. WESENDONCK,<br>"<i>Second Vice President.</i>"

The judge charged the jury fully as to the extent of the authority of R. B. Hall and Lula Parham to draw checks in the name

of the defendant, and that they had no authority, as agents, to do a "kiting business," and that the plaintiff is presumed to have had notice of such lack of authority. He then charged the jury as follows:

"Checks are always supposed to be drawn upon a previous deposit of funds. If you find from the evidence that the check in controversy was one of a series of kiting checks and that the plaintiff knew or ought to have known this fact, in the exercise of reasonable care as prudent bankers, you will answer the first issue 'No.' Knowledge of any facts and circumstances reasonably calculated to put a man on inquiry makes it his duty to make inquiry, and he will be fixed with notice of all facts which such inquiry would have elicited. If you find from the evidence that the plaintiff did not have actual notice of such kiting, or constructive notice, that is, knowledge of such facts and circumstances as would put it upon notice by proper inquiry and investigation—in other words, if you find that the plaintiff neither knew nor had reasonable ground to believe that Hall was engaged in kiting checks, but, on the contrary, plaintiff reasonably believed that the account with plaintiff was being used by Hall as the company's account, and not his own private account, for his own benefit, then you will proceed to consider whether the defendant authorized the check in controversy. If the plaintiff has not satisfied you that it neither knew nor had reasonable ground to believe that Hall was engaged in kiting checks and using the deposit for his own personal benefit, you will answer the first issue 'No.'

"Now, as to the authority to draw the check in controversy, the burden is upon the plaintiff to satisfy you, by the greater weight of evidence, that Lula Parham had authority to draw the check in controversy. Unless the plaintiff has so satisfied you, you will answer the first issue 'No.' "

The court then directed the attention of the jury to the facts and circumstances tending to show whether Lula Parham had authority to draw the check in controversy, and whether the defendant had notice that R. B. Hall and Lula Parham were "kiting" checks, and that the check for $1,250 was drawn without the authority of the defendant. The court further instructed the jury as follows:

"The defendant is bound by such acts of its agents as it expressly authorized, or such acts as are committed by its agents within the apparent scope of their authority—that is, such acts as it reasonably led the plaintiff to believe the agent possessed."

The charge was exceedingly favorable to the defendant and presented its contentions with reference to the issues and evidence in the case as strongly as the law permitted with a due regard to the rights of the plaintiff.

The law in regard to the duty and authority of an agent in the transaction of the business of his principal and the liability of the principal for the acts of his agent was fully explained to the jury with reference to the special facts and circumstances of this case, and the charge in this respect was in accordance with the authorities upon the subject. *Bank v. Hay,* 143 N. C., 326, and cases cited therein. The real and vital questions in the case were, whether R. B. Hall and Lula Parham had been engaged in a "kiting business," and if so, whether the fact was known to the plaintiff, or could have been known by the exercise of reasonable care and diligence. It was conceded that if they had been "kiting" checks, and the check in controversy was one of the series of such checks, and, further, that the plaintiff knew, or should have known, such to be the case, then there was no liability on the part of the defendant. Upon the evidence, as we view it, these were facts for the jury to find, and the court properly left the matter to the jury as one of fact, instead of instructing them, as matter of law, to answer the first issue in favor of the defendant, upon the assumption that the dealings of R. B. Hall with the plaintiff were not within the scope of his authority as manager of the defendant company and that, in law, the plaintiff had notice thereof. The court properly placed the burden upon the plaintiff of showing the authority of Lula Parham to draw the check, and correctly instructed the jury to ascertain whether such authority existed under the facts and circumstances of the case as they might find them to be. In other words, whether she had the actual or apparent authority to draw the check, under the evidence and the principles of law concerning the liability of a principal for the act of his agent, as already explained to them.

As we have stated, there was very strong evidence to show that R. B. Hall and Lula Parham were engaged in kiting transactions—that is, they were interchanging commercial paper for the purpose of temporarily raising money or sustaining credit; but, on the contrary, the defendant had informed the plaintiff, about ten days before the check for $1,250 was deposited with the plaintiff bank, that R. B. Hall and Lula Parham had authority to draw checks in the name of the defendant as its agents, and Frank F. Fagan, cashier of the plaintiff bank, testified that he did not know that the checks drawn by them respectively were not authorized, nor did he know that there was anything wrong in their transactions with his bank or the bank in Memphis. There was testimony sustaining the contention of each of the parties, and, under the circumstances, it was proper to submit the case to the jury with proper instructions as to the law bearing upon it. The court instructed the jury fully and correctly as to what would constitute notice that R. B. Hall and Lula Parham were not acting within the scope of their authority as agents of the defendant. While the preponderance of the evidence may have been on the defendant's side, we do not think, if this be so, it authorized peremptory directions to the jury to find in favor of the defendant in answering the issues. If the verdict was against the weight of the evidence, the judge could have set it aside, and if he failed to do so upon proper application, we cannot review his decision here and correct the error. There are few, if any, controverted questions of law in the case, and we have not deemed it necessary, therefore, to cite the authorities which sustain the charge of the court, and have confined our discussion to the pivotal question, whether the case should have been submitted to the jury to find the facts under proper instructions as to the law, as was done by the court, or whether the court should have charged substantially, as requested by the defendant's counsel, that, upon the evidence, they should answer the first issue in the negative.

The issues were sufficient to present all the controverted matters in the case, and there was no error in rejecting those tendered by the defendant. *Deaver v. Deaver,* 137 N. C., 240.

Upon a review of the whole case we find no error in the rulings and judgment of the court.

No Error.

CONNOR, J., dissenting: An examination of the record in this case, containing all of the evidence, forces me to the conclusion that, taking the whole evidence as true, the plaintiff bank was put upon notice that Hall and Miss Parham were "kiting" checks; that there was no fund upon which these checks were drawn, and this must have been known to the officers of the bank. If the check sued upon in this action was the only one drawn by Hall, I should concur in the opinion of the Court, but it is only one of a series of checks, all of which, when considered together with other admitted circumstances, show to my mind conclusively that the account is made up of a number of checks, all of which were drawn in accordance with the system of "kiting" carried on by the parties. The authorities cited in defendant's brief establish its contention that the checks were not drawn against any fund in bank, but upon other checks crossing each other in the mail for the purpose of maintaining an apparent balance. I am therefore compelled to dissent from the conclusion reached by the majority of the Court. In consequence of the late day of the term upon which the opinion is filed, I am unable to set out in full and discuss the evidence. I can therefore only express, with all possible deference, my dissent.

HOKE, J., concurs in dissenting opinion.