## In re SELMAN HEATING & PLUMBING CO.

(District Court, N. D. Alabama, S. D. March 7, 1913.)

### No. 11,975.

1. PRINCIPAL AND AGENT (§ 123*)—GENERAL OR SPECIAL AGENT—EVIDENCE.

Evidence *held* to require a finding that a sale of certain goods by petitioners to a bankrupt through an agent was made after the agent had terminated his contract as petitioners' general local representative, and while he was acting as a special agent only.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 426-429; Dec. Dig. § 123.*]

2. BANKRUPTCY (§ 140*)—PROPERTY OF BANKRUPT—SALE BY SPECIAL AGENT—VIOLATION OF AUTHORITY.

Where petitioners' special agent, authorized only to make a sale of certain goods to a bankrupt on receiving notes secured by indorsement, attempted to make the sale, receiving the bankrupt's unindorsed notes, which petitioners disapproved and caused to be returned to the bankrupt, the sale was not effective to pass title to the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

3. PRINCIPAL AND AGENT (§ 148*)—GENERAL AGENT—OSTENSIBLE AUTHORITY.

Petitioners' local representative having severed his connection with them to take effect March 1, 1912, they determined to close their local business, and for this purpose directed that he sell the goods belonging to petitioners in the local warehouse, accepting for any unpaid part of the price only the purchaser's notes with good personal indorsement. He

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sold the goods to bankrupts, accepting their unindorsed notes for the unpaid portion of the price, which petitioners refused to accept, and returned to the bankrupts through petitioners' attorney. *Held*, that such sale was not in the usual course of business of the agent; and hence the bankrupts were not entitled to claim that he had ostensible authority to accept the unsecured notes and complete the sale, but they were charged with notice of his instructions with reference to the particular transaction.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. § 148.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Selman Heating & Plumbing Company. On petition of F. S. Hardy & Co. to reclaim certain property. Petition allowed.

Perdue & Cox, of Birmingham, Ala., for petitioner.

Max J. Winkler, M. M. Ullman, and Thompson & Thompson, all of Birmingham, Ala., for trustee in bankruptcy.

GRUBB, District Judge. This was a petition to review the order of the referee disallowing the petition of the claimants to reclaim certain goods, or the proceeds of their sale as made by the trustee under the usual stipulation, upon the ground that title remained in petitioners at the time of the filing of the petition in bankruptcy. The record shows without conflict that the property involved was originally the property of petitioners, and that in November, 1911, it was stored, at their instance, in the warehouse of the bankrupt in Birmingham, with leave to the bankrupt, upon the specific order of the petitioners' local representative in each instance, to sell portions of the stock. The stock was kept for petitioners' general use in their trade at Birmingham. In February, 1912, the local representative of the petitioners severed his connection with them, to take effect March 1st. In view of this, petitioners determined to close out their business in Birmingham, and sell out their stock. Their former representative was thereupon authorized by them, as petitioners contend, to dispose of the balance of their stock as their special agent and after he had left their general employment. The trustee contends that their local representative made the sale to the bankrupt while still their general sales representative and by virtue of his authority as such. The local representative did make a sale or attempted sale of the entire remainder of the stock to the bankrupt in February or March, 1912; some three months before bankruptcy intervened. The actual authority given their local representative by petitioners was only to sell the bankrupt, taking notes amply secured by personal indorsement. However, the local representative violated his instructions and accepted the bankrupt's unindorsed notes and sent them to petitioners, but petitioners disapproved, and caused them to be returned to the bankrupt through their attorney. The rights of the respective parties in the property involved are to be determined by the extent of the authority of the petitioners' local representative to bind the petitioners by a sale on terms, which he had no authority to propose, and which violated his instructions.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is conceded that, if the sale was made after March 1st, petitioners' local representative, having previous to that time left their employment, and having only such authority as was conferred upon him by petitioners to conduct the particular transaction, was a special rather than a general agent in the conduct of the sale, and the bankrupt would, in that event, take the risk of his actual authority to make it on the terms it was attempted to be made, and, as the agent had no actual authority to make the terms he attempted to make, the sale was not binding on petitioners, and the title did not pass out of them.

[1] The referee reached the conclusion that the sale was made before March 1st, and while the agent was acting as petitioners' general local representative. I think the letter of February 29, 1912, written petitioners by their agent, clearly shows that no sale was made by the agent to the bankrupt until after March 1st. That letter asks petitioners to submit prices to the bankrupt on part of the stock, which is inconsistent with the existence of even an executory agreement to sell it at the date the letter was written. That there was no such executed sale as would avail to pass title is made clear by the fact that no definite terms were fixed and that the notes subsequently tendered to petitioners by the bankrupt were not like those prescribed in the original agreement, and must have been the result of negotiations subsequent to March 1st. The notes which were tendered by the bankrupt and rejected by the petitioners were not submitted to them until more than two months after March 1st. Looking to the correspondence and the undisputed history of the transaction, I think the fair inference to be drawn is that there was no binding agreement to sell, and certainly no sale that would pass title from the petitioners to the bankrupt prior to March 1, 1912.

[2] If so, then the petitioners' local representative had only such authority as had been actually conferred upon him by his principals, the petitioners, which was to sell only upon indorsed notes with approved security, which he failed to do, and the unauthorized agreement made by him, in that event, would not be binding upon petitioners.

[3] Even if the sale had been made prior to March 1, 1912, and while petitioners' local representative was still acting as their general sales agent at Birmingham, in view of the conceded fact that it was made in direct violation of the petitioners' repeated instructions not to sell the bankrupt except on approved personal security, the sale would not bind petitioners, unless its terms were within the apparent authority of the agent. A general sales agent has the undoubted authority to bind his principal to sales in the ordinary course of business and by extensions of credit usual in such course of business. This would be true, though the agent acted in violation of secret instructions of his principal to the contrary. The sale contended for, however, was not in the usual course of business of the agent as petitioners' sales agent, nor was it made on the usual terms of credit. It was not a sale to a customer from stock in the ordinary course of business, but a sale to a dealer or competitor of the entire stock of the principal to close out their business at the local point. The buyer was aware of this situation when he purchased. The terms of credit were not those usually extended to a customer, but unusual, and resembled rather those ex-

tended to the purchaser of a business or an entire stock. By accepting such unusual terms, the purchaser was charged with notice that it was an unusual transaction, and one not within the general scope of the agent's authority as a salesman. The bankrupt, being notified by the peculiar circumstances of the transaction that it was a particular and unusual transaction and not one of ordinary sale to a customer, cannot claim that it was made within the apparent, though beyond the actual, authority of the agent, since the apparent authority of the agent extended only to transactions within the general scope of his business for his principal and not to particular transactions which he conducted for his principal, not by virtue of his general agency, but only by virtue of a special delegation in that particular instance and no other. This being true, the bankrupt dealt with the agent at its peril as to the extent of his authority, and it being conceded that he had actual authority to sell to the bankrupt only by taking indorsed notes, which he failed to do, the attempted sale, even if made prior to March 1st, would not bind the petitioners.

The petition for review is granted, and the petition is referred to the referee to proceed in conformity with this opinion and the stipulation on file with reference to the disposition of the proceeds of the sale of the property involved.