## SOUTHWESTERN BELL TELEPHONE CO. v. COUGHLIN.

### No. 5717.

Circuit Court of Appeals, Fifth Circuit.

May 7, 1930.

Jno. T. Garrison, of Houston, Tex., Nelson Phillips, of Dallas, Tex., and C. E. Coolidge, of Houston, Tex. (John T. Garrison and Arterbury & Coolidge, all of Houston, Tex., Nelson Phillips, of Dallas, Tex., and Jos. W. Jamison, of St. Louis, Mo., on the brief), for appellant.

D. A. Simmons, of Houston, Tex. (Thos. H. Ball, D. A. Simmons, and Ball & Simmons, all of Houston, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge.

This suit was brought by the appellee against the appellant, Southwestern Bell Telephone Company, a corporation which was controlled by the American Telephone & Telegraph Company, which is herein referred to as the American Company. The suit asserted the claim that appellee was entitled to recover from appellant the stated amount of the market value, $21,800, with interest thereon, of 130 shares of the stock of the American Company which were the subject of three transactions between the appellee and one W. D. Goodrich, who was an agent of the appellant, the date of one of those transactions being November 21, 1927, the date of another being December 17, 1927, and the date of the remaining one being January 24, 1928; or, in the alternative, that appellee was entitled to recover from the appellant the sum of $14,600, the aggregate of the sums of money paid by appellee in those transactions, with interest thereon. By stipulation in writing a jury was waived. At the conclusion of the evidence the appellant requested the court to find in its favor and to enter judgment accordingly. The court rendered judgment in favor of the appellee for the aggregate of the amounts paid by appellee in the three transactions mentioned, with interest on those amounts, and the court costs. The evidence showed the following: In September, 1925, and thereafter throughout the period covered by transactions between appellee and Goodrich, with reference to the purchase and sale of American Company stock, appellant was engaged in selling that stock to persons applying therefor. At the time last mentioned the appellee, a widow, having some money she wished to invest, went to the office of the appellant in Houston, Tex., spoke to an official of the appellant in reference to investing in stock, and by that official was told that Mr. Goodrich was the man to see. During the period from September, 1925, to November, 1927, the appellee by transactions with Goodrich made sundry purchases of American Company stock, some for cash and some on installments, all at the New York stock exchange market price at or about the time of the purchase, or approximately the market price. Appellee testified to the effect that, for all the stock she got as results of transactions prior to the three now in question, she paid the New York stock exchange market price therefor at the time the stock was bought. In November, 1927, Goodrich stated to appellee that she could buy at the price at which it had been sold to employees, which was much less than the market price, stock which had been sold to employees and which they had failed to pay for, and that such employees' stock as appellee bought he would sell for her on the same day at the market

price, and that appellant would pay to appellee within 60 or 70 days the amount of the latter's profits in the transaction. Thereupon appellee, on November 21, 1927, paid to Goodrich for fifty shares of the American Company stock an amount greatly less than the market price of the stock at that time, and then received from Goodrich a receipt, signed in the name of appellant by Goodrich, for the amount of the market price of the stock at that time, with the understanding between appellee and Goodrich that appellant would pay to appellee the last-mentioned amount within 60 or 90 days. The other two transactions now in question were substantially like the one above described. Goodrich had no authority to sell stock which had been contracted for by employees and had not been paid for by them, and had no authority to sell stock at less than the market price at or about the date of the sale. The appellant did not receive any of the money paid by appellee to Goodrich in the three transactions now in question. Goodrich appropriated that money to his own use, and absconded. So far as any evidence indicated, no one authorized to act for or represent appellant knew until after appellee asserted her claim, following the disappearance of Goodrich, of his selling or offering to sell American Company stock for less than the market price at the time of the sale or offer to sell. The following parts of the testimony of the appellee are typical of her version of the transactions now in question:

"Mr. Goodrich told me that they had employees' stock that he was authorized to sell, and he sold it to me. He told me that he had telephone company stock that had been employees' stock that he was authorized by the company to sell and that that was stock that the telephone company had and he could sell it; that he was authorized by the company to sell it. These last three transactions where I was buying at $105 and $110 I knew that stock was worth on the market $180 or $181, and I knew that Mr. Goodrich was offering this stock at $105 and $110; I knew he was representing that it was employees' stock that he was authorized to sell; that is, authorized by the telephone company, not the employees; he told me by the telephone company. I knew it was employees' stock, stock that employees had purchased. I knew from this statement and my understanding that Mr. Goodrich was selling for the telephone company its employees' stock at $105 and $110, when it was worth $180 on the market, and I put my money in on that basis. * * *

"On the same day that I bought the stock and took receipts on the basis that I bought it Mr. Goodrich claimed to have sold the stock for me at the market value and that the company would pay me the amount of my profits within 60 or 90 days. I did not expect to get the stock at all; I just expected to get the profits on those transactions."

The three transactions now in question were radically different from all the previous transactions in which Goodrich acted for appellant in making sales of stock to appellee. The previous sales of stock to appellee were at the market price. The conduct of Goodrich in offering to sell to appellee, at greatly less than its market price, stock owned or controlled by his principal, and to bind his principal by an agreement that the latter pay to appellee the market price of the stock at the time of such sale, was so unusual and out of the ordinary course of the agency as it previously had been exercised, involving the assumption by the agent of an extraordinary and improbable power, as to put an ordinarily prudent person on his guard, with the result of requiring him, before becoming a party to such a contract as the agent tendered, to ascertain from the principal the nature and extent of the authority conferred on the agent. The implied power of an agent, however general, does not extend to acts which are not in the ordinary course of the business he is employed to transact, but are unusual, remarkable, and clearly adverse to the interests of his principal. If an agent, though a general one, proposes to enter into a transaction of such extraordinary character as would put a reasonably prudent person on inquiry, and the party dealt with enters into such transaction without seeking from the principal information as to the agent's authority to bind the principal by such a transaction as the one proposed, the principal is not liable to such party for money paid to the agent in such transaction which did not come to the possession of the principal, if the latter did not authorize or ratify the transaction. Stephens v. John L. Roper Lumber Co., 160 N. C. 107, 75 S. E. 933, 41 L. R. A. (N. S.) 1141; Western National Bank v. Armstrong, 152 U. S. 346, 14 S. Ct. 572, 38 L. Ed. 470; In re Selman Heating & Plumbing Co. (D. C.) 203 F. 777; Id. (C. C. A.) 209 F. 1004; Upton v. Suffolk County Mills, 11 Cush. (Mass.) 586, 59 Am. Dec. 163; 21 R. C. L. 909; Mechem on Agency (2d Ed.) § 752. The evidence showed that Goodrich did not have actual or apparent authority to bind the appellant by a transaction under

which appellee was to get stock owned by appellant at a price greatly less than it was worth in the market, and the appellant was to pay to appellee the amount that stock was worth in the market at the time Goodrich undertook to sell it. The appellant, not being in any way bound by the transaction, was not liable for money which Goodrich got from appellee under it and appropriated to his own use, no part of that money having been received by appellant. We conclude that the above-mentioned ruling was erroneous. Because of that error the judgment is reversed, and judgment dismissing the suit is here rendered.

Reversed and rendered.