## CITIZENS STATE BANK, DONNA, TEX. v. WESTERN UNION TELE-GRAPH CO.

### No. 12457.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1949.

J. E. Wilkins and Harry L. Hall, both of Mission, Tex., for appellant.

John W. Miller, of Dallas, Tex., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Alleging that the bank was claiming against it overdrafts aggregating $19,373.-04 drawn on an account styled, "Western Union, India M. McGuire", appellee brought this suit for a declaration that it was not liable therefor. Its claim set out in extenso in its pleading was that these overdrafts were the result of long continued manipulation of the bank account by India M. McGuire with the knowledge, connivance and assistance of the appellant bank, but wholly without the knowledge of appellee, and therefore, the bank, and not it, should suffer the loss resulting therefrom.

Appellant, in defense, denied all the charges made against it, particularly that it knew of, assisted in, or contributed to the manipulation of the account. Pointing to the fact that the overdrafts arose in an account of "Western Union, India M. McGuire", and that the said McGuire had conducted appellee's business in Donna for a long period of time, appellant invoked the general rule of law that what one does

through an agent he does himself, and for losses caused to another by that doing he is, therefore, liable.

There was also a counter-claim in which substantially the same facts were pleaded and judgment for the amount of the overdrafts was sought.

The district judge, to whom the case was fully tried without a jury, making detailed findings,[1] found the facts as contended for by plaintiff. Concluding:

"From the facts detailed herein, and particularly the great number of overdrafts, the size of the overdrafts, the fre-

[1] "Findings of Fact:

"I find the following to be the pertinent facts: That the City of Donna, during the year 1946, had a population of some 5,000 inhabitants; that Hotel Donna, during said year, had as its sole owner, Barney Goodman, who resides in Kansas City, Missouri, and whose business was real estate investments; that India M. McGuire, during such time, and at all times material hereto, was the manager of said Hotel Donna (sometimes called Donna Hotel). That The Citizens State Bank of Donna was, at all times material hereto, the only bank in Donna, Texas, and had a capital stock of $50,000.00; that George Vance was vice-president, cashier and a director of said bank, and in charge of said bank. I further find that A. A. Frase was formerly manager of the coffee shop in the Hotel Donna, and at the time most of the transactions hereinafter mentioned occurred, was operating a restaurant in Donna, known as the Talk O' The Town. This restaurant was located about a block from defendant bank, and the Hotel Donna was also within a block of said bank.

"Some years before the transactions hereinafter described, Hotel Donna, acting through its owner, Barney Goodman, signed an agency contract with plaintiff herein, whereby said Hotel Donna agreed to act as agent for plaintiff in the sending and receiving of telegrams, including the sending and paying of money order telegrams. Settlement for the previous month's business was made, in accordance with said contract, by the Hotel Donna Agency to the Houston office of plaintiff company, by checks drawn on defendant bank; however, money order applications were sent in daily. These checks were accepted by the Houston office of plaintiff, cashed through the South Texas Commercial National Bank of Houston, and then sent through the Federal Reserve Bank in Houston. They then cleared through the Alamo National Bank in San Antonio, Texas, and were then sent by said Alamo National Bank to defendant bank. This process took, on an average, of some five or six days.

"In the early part of 1946 a large number of money orders were written by the Western Union Agency at Donna, Texas, payable to A. A. Frase. India M. McGuire, during the year 1946, issued and forwarded to the Western Union Telegraph Company accounting center at Houston, Texas, 143 settlement checks, aggregating $366,216.69, which were presented to the defendant bank at Donna, Texas, for payment on 111 separate occasions, at which times, except one, the bank balance of Western Union-India M. McGuire, was practically nothing, or a very nominal amount, at the time of presentation of same for payment.

"The procedure in such cases during the year 1946 was for the defendant bank to call India M. McGuire by telephone and advise her of the situation. She would, on such date, cover said worthless checks. She would do this by payment in cash, or by payment partly in cash and partly by check, or wholly by check, of the said A. A. Frase, either drawn by said Frase personally, or as manager of the Hotel Donna Coffee Shop, or as manager of said Talk O' The Town Restaurant. These checks would be drawn on the First State Bank of Alamo, Texas. Alamo is about four miles distant from Donna. The checks of the said Frase (in one of the three capacities stated) would then be sent by defendant bank to the Alamo National Bank in San Antonio, where they would be cleared through the Federal Reserve Bank and returned to the First State Bank of Alamo for payment. When such checks were reported worthless by said Alamo State Bank (as 67 of said A. A. Frase's checks, aggregating $247,545.34, were in 1946), the defendant bank would be notified of such fact by telegram. The telegram would go from Alamo, Texas, to McAllen, Texas, and then to the office of the Western Union Telegraph Company in Hotel Donna, where, in 15 out of the 67 instances, same would be suppressed by India M. McGuire and not delivered to the addressee, defendant bank.

"Plaintiff was not informed or notified by defendant bank in any way of the transactions above described, nor did plaintiff otherwise learn of same until about November 30, 1946.

\* \* \* \* \* \*

"Plaintiff is a huge corporation, old and solvent. The overdrafts drawn by

952

quency with which they occurred, the length of time during which they occurred, the manner of covering same, the aid given by defendant bank in so covering same, I find, as a matter of law, that the bank acted in bad faith (Fenner & Beane v. American Surety Co. of New York, Tex. Civ.App., 156 S.W.2d 279, writ of error refused) and was negligent (Marlin National Bank v. Reed, Tex.Civ.App., 164 S.W.2d 260, writ of error refused. First National Bank of Wichita Falls v. First National Bank of Borger, Tex.Civ.App., 37 S.W.2d 802, writ of error refused) in the manner of handling the account of plaintiff (if, in fact, such account was plaintiff's), and that such negligence was the proximate cause of loss of the $19,000.-00 in question, and such negligence precludes defendant bank from recovery on its cross complaint.

"I find that as a result of such misconduct on the part of defendant bank, this matter was allowed to continue, without notice to, or knowledge of, or fault of, plaintiff herein, and that as between the two, plaintiff and defendant, the loss should be suffered by defendant bank."

He entered judgment for plaintiff accordingly.

Appellant is here insisting that in so finding, the court erred in fact and in law, appellee that he was right for the reasons that he gave.

█ We agree with appellee. A reading of the record fully supports the findings of fact and the conclusions of law. Indeed, we think it plain that no other findings would be supported. But for the inexcusable conduct of the bank in permitting, if not encouraging and in part inducing, the system of continuous kiting of checks which went on for so long, no substantial loss could have occurred. Had the bank acted in good faith, had it exercised the slightest diligence, it would have put a stop at once to the remarkable goings on between McGuire and Frase, and at once notified plaintiff of them. Had it done so, the wrong doing would have been stopped in its beginnings, and no loss would have occurred.

█ It is true that a principal will ordinarily be held liable for the acts of an agent acting within the scope or apparent scope of his authority when these acts cause loss to innocent persons. It is equally true, though, that where one acting for another not in, but contrary to, the interest of his principal, causes a loss, the principal will not be held accountable for it to one who aided and abetted, was derelict in his own duty, negligent, in respect to the wrongdoing, or, by his silence when he should have spoken, prevented the principal from ascertaining it in time to prevent the loss. The authorities cited by the district judge fully support the view he took. It is unnecessary to cite others.

The judgment was right. It is affirmed.

Western Union, India M. McGuire, were, in effect, loans authorized by the defendant bank, which bank had no resolution of the Board of Directors of the Western Union Telegraph Company authorizing said India M. McGuire to use its credit in making such loans. Such loans were unusual, remarkable and clearly adverse to the interests of plaintiff (Southwestern Bell Telephone Co. v. Coughlin, 5 Cir., 40 F.2d 349). They were made without the knowledge or consent of plaintiff, and were in nowise ratified (Williams et al. v. Thrasher et al., 5 Cir., 62 F.2d 944, writ of error denied 289 U.S. 748, 53 S.Ct. 691, 77 L.Ed. 1493) after their making, nor was the plaintiff notified in any way of such extraordinary procedure until the Alamo National Bank in San Antonio, Texas, called a halt to such 'kiting' (Vol. 23, Words and Phrases, Perm.Ed., page 557, citing Farmers & Merchants Bank, etc. v. Germania Life Ins. Co., 150 N.C. 770, 64 S.E. 902, 903) at which time the overdrafts amounted to $19,363.04, which amount was reduced by payments made by India M. McGuire to $19,000.00."