FIRST STATE BANK & TRUST COMPANY OF EDINBURG, Texas, Appellant,

v.

Mike E. GEORGE et al., Appellees.

No. 892.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 31, 1974.

Rehearing Denied Feb. 13, 1975.

Mitchell O. Sawyer, Kelley, Looney, Alexander & Hiester, Edinburg, for appellant.

O. C. Hamilton, Jr., Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, McAllen, for appellees.

## OPINION

BISSETT, Justice.

This is a suit to recover $57,971.47 because payment was stopped on six checks. The First State Bank & Trust Company of Edinburg, Texas, hereinafter called "Bank", instituted suit against Mike E. George and wife, Letha K. George, hereinafter called "Georges", to recover damages for six checks signed by the Georges, payable to the order of Joe Davis and deposited in accounts owned by Davis, upon which payment was subsequently stopped.

Trial was to a jury, which returned a verdict in favor of the Georges. Judgment was entered on the jury's verdict. The Bank has appealed.

During the early part of October, 1968, Joe Davis, who was a director of the Bank from the mid 1950's until January, 1969, approached the Georges for money and received six checks from them in the total amount of $151,000.00. The checks, which were drawn on the First National Bank of McAllen, were deposited by Davis in two accounts in the Bank, as follows:

$27,000.00, deposited 10/14/68 in Davis Gin Company account;

$28,000.00, deposited 10/15/68 in Santa Cruz Cattle Co. account;

$26,000.00, deposited 10/15/68 in Santa Cruz Cattle Co. account;

$22,000.00, deposited 10/16/68 in Davis Gin Company account;

$25,000.00, deposited 10/16/68 in Santa Cruz Cattle Co. account;

$23,000.00, deposited 10/17/68 in Santa Cruz Cattle Co. account.

Contemporaneously with the issuance of the aforesaid checks to Davis by the Georges, Davis issued his checks to them in the corresponding total of $151,000.00.

Credit was given immediately by the Bank to Davis on the Georges' checks, even before they had been presented to the First National Bank of McAllen, the payee bank. On October 15, 1968, Mr. Bascum Spiller, President of the First National Bank of McAllen, informed the Georges that he had called the Edinburg Bank, appellant herein, regarding certain checks signed by Joe Davis and payable to the Georges, which were insufficient in that Davis did not have enough money in his accounts to cover said checks. The Georges stopped payment on the $27,000.00, $28,000.00, and $26,000.00 checks on October 21, 1968, and on the $22,000.00, $25,-

000.00 and $23,000.00 checks on October 22, 1968. The checks were later charged back by the Bank to the respective accounts of Davis.

Sometime after the Bank had been notified that payment had been stopped on the six checks, Mr. Tom East borrowed $150,000.00 from the Bank. He loaned Davis $150,000.00 so that he could take care of the overdrafts at the Bank. Davis deposited $150,000.00 in the Santa Cruz Cattle Co. account on October 24, 1968, and on the same day also deposited $13,000.00 and $4,000.00 in that account. After charging back the six checks and other checks not here involved, the Bank's records showed that the accounts in which the Georges' checks were deposited were still overdrawn in the amount of $57,971.-47. Suit was instituted against the Georges for recovery of that sum of money on the theory that by advancing money against the checks drawn by the Georges prior to notice of their dishonor as a collecting bank, the Bank became a holder in due course of said checks, and was therefore entitled, as a matter of law, to recover the $57,971.47. The Georges, in their answer, in addition to a general denial, alleged that at the time the checks were deposited by Davis in the Bank and before any withdrawals were made against the money in the accounts that the bank had actual notice that payment had been stopped on the checks, and that the checks were in fact paid to the Bank when Davis borrowed $150,000.00 and deposited that sum of money in the Bank for the specific purpose of taking care of the overdrawn accounts.

The jury, in response to special issues, found that at the time the checks in question were deposited, the Bank did not receive the same in good faith; that the Bank had notice of a claim or defense to them on the part of the Georges; that the Bank received full payment or satisfaction on the checks; that Davis was kiting checks during the month of October, 1968; that Davis obtained the Georges' checks in exchange for kited checks; that the Bank had knowledge that the checks in question were exchanged for kited checks at the time said checks were deposited; that Mike George did not have knowledge that such checks obtained by Joe Davis were in exchange for the kited checks; and that it was understood between the Bank and Davis that the deposits or any of them made by Davis on October 24, 1968 were for the specific purpose of covering the Mike George checks in question.

The Bank, in its point of error No. 1, asserts that the trial court erred in failing to grant its motion for judgment non obstante veredicto in connection with the $27,000.00 check, because the undisputed evidence revealed that the bank was a holder of such check, that it did not receive notice of the stop payment order until after the check had been deposited in the bank and the funds disbursed to Davis, or made available for his immediate use, and because the undisputed evidence further established that it did not recoup any of the funds represented by such check from Davis.

In points nos. 5, 6, 7, and 8, the contentions are made: that the trial court erred in submitting Special Issue 5 because it failed to inform the jury that a bona fide loan transaction would not be included within the definition of "check kiting" (Point 5); that it erred in submitting Special Issues 6 and 7 because such issues were predicated upon an affirmative answer to Special Issue 5, and constituted error for the same reason urged against the submission of Special Issue 5 (Point 6); that it erred in submitting Special Issue 9 and because it inquired into whether any of a group of deposits were made for the purpose of paying the Georges' checks, and did not inquire as to whether any particular one of the deposits were for such purpose (Point 7); and that it erred in submitting Special Issue No. 10 for the reason that the issue did not inquire about a factual matter, but inquired of the jury as to a legal conclusion (Point 8).

Since points 1, 5, 6, 7, and 8 are each directed only to the $27,000.00 check, which was dated and deposited on October 14, 1968, we will limit our discussion to that check only insofar as those points are concerned. In the discussion that follows, we deem it necessary to set out Special Issues 5, 9 and 10.

■ If a bank is found to be a holder in due course, then to that extent it takes the instrument free of all defenses of any party to the instrument with whom it has not dealt. Tex.Bus. & Comm.Code Ann. § 3.305(b) (1968), V.T.C.A. A bank, in order to fall within the category of holder in due course, must take the instrument for value; in good faith; and without notice that it is overdue, or has been dishonored, or of any defense against or claim to it on the part of any person.

■ Good faith is defined in Tex.Bus. & Comm.Code Ann. § 1.201(19) (1968) to mean "honesty in fact in the conduct or transaction concerned". The test is not diligence or negligence; and it is immaterial that the bank may have had notice of such facts as would put a reasonably prudent person on inquiry which would lead to discovery, unless the bank had actual knowledge of facts and circumstances, that would amount to bad faith. Riley v. First State Bank, Spearman, 469 S.W.2d 812 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.); Richardson Company v. First Nat. Bank in Dallas, 504 S.W.2d 812 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.). In the instant case, there was testimony that Mr. Shrader should have known that Davis was kiting checks at the time in question, and that by looking at the accounts involved, any banker could see that check kiting was going on during October, 1968.

■ As to the question of notice, Tex.Bus. & Comm.Code Ann. § 1.201(25) (1968) is controlling and states:

"(25) A person has 'notice' of a fact when

(A) he has actual knowledge of it; or

(B) he has received a notice or notification of it; or

(C) *from all the facts and circumstances known to him at the time in question he had reason to know that it exists.*" (Emphasis added.)

The Bank's knowledge of the facts and circumstances surrounding the transactions, the special treatment it gave Davis, one of its then directors, the fact that it provided immediate credit on the checks which Davis deposited to his accounts, and the close relationship between certain bank officers and Davis, collectively, establish that the bank had actual notice of the check kiting by Davis. The Bank failed to carry the burden of establishing that it took the check in good faith and without any notice of a defense to the same. It was not a holder in due course. As a result, it took the check subject to all defenses that the Georges would have had, including that of check kiting and want or failure of consideration. Tex.Bus. & Comm.Code Ann. § 3.306 (1968).

As already noted, the Georges stopped payment on the check on October 21, 1968. Their action was made known to the Bank on that day. The deposit of $150,000.00, which Davis said was made possible by a loan from Mr. East, was made on October 24, 1968. The actual bookkeeping entry by the Bank which reflected the charge back was not made until November 18, 1968. During that interval numerous checks were paid out of the account to third parties. After the charge back, the Davis Santa Cruz Cattle Co. account had a deficit of $72,507.39. The account was made current by an entry on November 18, 1968 for $72,507.39, which relieved the overdraft condition of that particular account.

The purpose of the loan made by Mr. East to Davis, and the understanding between the Bank and Davis relating to the $150,000.00 deposit, are each established by the testimony of Davis, which is summa-

rized, as follows: the purpose of the loan was to take care of the six checks; there was a discussion between East, Shrader (an officer of the Bank) and Davis relating to the checks; Shrader, at the instance of and with the permission of Davis, actually made the deposit into the Santa Cruz Cattle Co. account; it was the understanding of Davis that the $150,000.00, together with additional deposits of $13,000.00 and $4,000.00 would take care of the situation.

The jury's findings that the Bank did not receive the check in good faith, that it had notice of a claim or defense to it on the part of the Georges, and that it had received full payment thereon are each supported by the record. See Citizens State Bank v. Western Union Telegraph Co., 172 F.2d 950 (5th Cir.). Point 1 cannot be sustained.

■ Special Issue 5, together with its accompanying instruction, reads as follows:

## "SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that during the month of October, 1968, Joe Davis was kiting checks? ·

To 'kite' checks means to write a check against a bank account where the funds are insufficient to cover them hoping that before they are presented the necessary funds will be deposited.

Answer 'We do' or 'We do not' ".

The jury answered: "We do". The definition of check kiting given in connection with Special Issue No. 5 was sufficient. Sutro Bros. & Co. v. Indemnity Insurance Co. of North America, D.C., 264 F.Supp. 273 (1967); Citizens State Bank v. Western Union Telegraph Co., 172 F.2d 950 (5th Cir. 1949). Points 5 and 6 cannot be sustained.

■ Special Issue 9 was submitted in the following form:

## "SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that it was understood between the First State Bank and Trust Company of Edinburg, Texas, and Joe Davis that the deposits or any of them made by Joe Davis on October 24, 1968 were for the specific purpose of covering the Mike George checks in question?

Answer 'We do' or 'We do not' ".

The jury answered: "We do".

In addition to the deposit of the proceeds of the East loan ($150,000.00) in the Santa Cruz Cattle Co. account on October 24, 1968, Davis, on the same day, deposited the sums of $13,000.00 and $4,000.00. The Bank contends that since three deposits were made in varying amounts, it would be necessary for the jury to find whether a specific one of the deposits made was for the purpose of covering the George checks, and a simple answer that one or more of such deposits was for such purpose did not answer an ultimate issue in this cause. We do not agree. Rule 277, Texas Rules of Civil Procedure, as amended in 1973, reads, in part:

"It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues. . . ."

Special Issue No. 9 inquired if the deposits, *"or any of them"*, were made for the specific purpose of covering the Georges' checks. The $150,000.00 item was one of those deposits. Even though Special Issue No. 9 does not specifically refer to the $150,000.00 deposit, it was sufficiently referred to and described by the

words "the deposits or any of them made by Joe Davis on October 24, 1968" and by the phrase "for the specific purpose of covering the Mike George checks in question". There is no question but that there is substantial evidence that it was understood by both the Bank and Davis that the $150,000.00 deposit, which he made on October 24, 1968, was for the specific purpose of covering the six checks, and could not be diverted in any manner which would defeat the special purpose for which the deposit was made. See City State Bank in Wellington v. National Bank of Commerce of Altus, Okl., 261 S.W.2d 749 (Tex.Civ. App.—Fort Worth 1953, writ ref'd n. r. e.) ; Martin v. First State Bank, Memphis, Texas, 490 S.W.2d 208 (Tex.Civ.App.— Amarillo 1973, no writ). The trial court was within its discretion in submitting the issue in the form that it was submitted. No abuse of discretion is shown. Point 7 cannot be sustained.

 Special Issue 10, as submitted, reads :

## "SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that by November 21, 1968 the overdrawn condition of the Santa Cruz Cattle Company account was eliminated by a loan or loans which the Bank made to Joe Davis?

Answer 'We do' or 'We do not' ".
The jury answered: "We do". It is argued that it was error to submit the issue for the reason that it did not inquire about a factual matter, but instead, inquired of the jury as to a legal conclusion, without any instruction by the trial court as to what constitutes a loan at law. Be that as it may, the Bank waived its right to complain about the lack of an explanatory instruction or definition of a "loan" in the trial court's charge. Rule 279, T.R.C. P., provides in part:

" . . . Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment *unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment.*" (Emphasis added.)

A litigant who finds any fault with the failure of the court to supply a substantially correct definition or explanatory instruction in the charge must request and tender in writing the omitted correct definition or explanatory instruction as a predicate for any appellate review. Yellow Cab and Baggage Company v. Green, 154 Tex. 330, 277 S.W.2d 92 (1955) ; Hodges, Special Issue Submission in Texas, § 72, pp. 180–181. Since the Bank did not present a written request to the trial court for the submission of a substantially correct definition or explanatory instruction, no predicate has been laid for the consideration of the point (No. 8) in this appeal. Point 8 cannot be sustained.

Moreover, points Nos. 5, 6, 7, and 8 must be overruled for the reason that the Bank's objections to the submission of Special Issues 5, 6, 7, 9 and 10 were not properly preserved for appellate review.

 Rule 272, T.R.C.P., provides, in part :

" . . . The requirement that the objections to the court's charge shall be in writing will be sufficiently complied with if such objections are dictated to the court reporter in the presence of and with the consent of the court and opposing counsel, before the reading of the court's charge to the jury, *and are subsequently transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript. . . .*" (Emphasis added.)

The transcript which was filed in this case does not contain any objections to the court's charge. Apparently, counsel for the Bank, at the close of the evidence, dictated objections to the charge because in

the statement of facts, which was not approved by the attorneys for the parties, there is an instrument denominated "Plaintiff's Special Exceptions to the Court's Charge". While it recites that the "exception and objections" are overruled, the instrument does not have the official signature of the judge endorsed thereon as required, nor is there any showing that the objections were dictated to the court reporter in the presence of and with the consent of the court and opposing counsel, as required by Rule 272. The instrument is inserted in the binder which contains the statement of facts immediately following page 608, and is numbered pages 611 to 616. The statement of facts was signed by the trial judge, as per his certificate which appears on page 609. The court reporter's certificate is found on page 610. Each certificate states that "the foregoing is true and correct to the best of my knowledge". It is obvious that pages 611 to 616, even though they are contained in the bound volume of the statement of facts, are not covered by the certificate of the trial judge. The instrument is not properly before us. It cannot be considered as being part of the statement of facts.

Under the circumstances, the Bank cannot complain of the alleged defects in the charge. The instrument was not signed by the judge and does not have his official endorsement thereon. There has been no compliance with Rule 272. In the absence of a compliance with this Rule, the Bank's objections were not properly preserved for appellate review and this point cannot be considered by us. Long v. Smith, 466 S. W.2d 32 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); Cody v. Mahone, 497 S.W.2d 382 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.); Charter Oak Fire Insurance Company v. Perez, 446 S. W.2d 580 (Tex.Civ.App.—Houston [1st Dist] 1969, writ ref'd n. r. e.).

Accordingly, the Bank's points of error Nos. 1, 5, 6, 7 and 8 are all overruled.

The Bank, in its Points of Error Nos. 2 and 3 complains that the trial court erred in refusing to submit its requested Special Instructions Nos. 1 and 2 to the jury. The requested Special Instructions read as follows:

"Special Instruction No. 1

You are instructed as a matter of law that the bank was not required to charge back any of the checks at any particular time, or at all, and that any failure to charge back a check, or to charge the check in a particular manner, does not affect the bank's right of action against the defendants.

Special Instruction No. 2

You are instructed that any credit given by a bank to a customer depositing an item is provisional and contingent upon that then being paid."

The Bank contends that under Tex.Bus. & Comm.Code Ann.Bus. & C., § 4.212(e) [1] (1968), it has no duty to charge back the item at any particular time, and that the evidence introduced conveyed to the jury the impression that the bank was in error in not charging the item back earlier and without such instruction the jury would proceed under an incorrect theory of law. We disagree. We do not believe that requested Special Instruction No. 1 states the rule correctly. The correct rule is set out in Comment 3 to § 4.212, Tex. Bus. & Comm.Code Ann. (1968), as follows:

"3. The right of charge-back or refund exist if a collecting bank has made a provisional settlement for an item with its customer but terminates if and when a settlement received by the bank for the item is or becomes final. *If the bank fails to receive such final settlement the right of charge-back or refund must be*

1. "(e) A failure to charge-back or claim refund does not affect other rights of the

bank against the customer or any other party."

*exercised promptly after the bank learns the facts. The right exists (if so promptly exercised) whether or not the bank is able to return the item."* (Emphasis added.)

Subsection (e) of § 4.212 of the Tex.Bus. & Comm.Code Ann. (1968) does not provide that the bank can charge back an item *at any time* after it has learned of facts, such as a stop payment order as the Bank here contends, but means that once the fact is known, the bank must promptly exercise its right to charge back. In addition, such instruction is not necessary to aid the jury in their factual determinations. Rule 277, T.R.C.P., provides, in part:

" . . . In submitting special issues the court shall submit *such explanatory instructions* and such *definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues,* and in such instances the charge shall not be subject to the objection that it is a general charge." (Emphasis added.)

■■■ The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted. Hodges, Special Issue Submission in Texas, § 10, pp. 29–30 (1959); McDonald, Texas Civil Practice, Vol. 3, § 12.14.2; Deviney v. McLendon, 496 S.W.2d 161 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.); Levermann v. Cartall, 393 S.W.2d 931 (Tex.Civ.App.— San Antonio 1965, writ ref'd n. r. e.). The only requirement to be observed is that the trial court must give definitions of legal and other technical terms. Nothing else, however interesting, or, indeed, however relevant to the case in general, which does not aid the jury in answering the issue, is required. Hodges, Special Issue Submission in Texas, § 8, page 25 (1959). The trial court has considerably more discretion in submitting instructions in this area than it has in submitting special issues. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.

W.2d 481 (1943); Levermann v. Cartall, supra.

■■■ Requested Special Instructions 1 and 2 do not refer to any particular issue or term used in the charge; they could only be considered by the jury as applying to the case as a whole; they were not necessary to assist the jury in properly answering any issue. None of the special issues which were submitted contained any legal or technical terms. Points of Error Nos. 2 and 3 are overruled.

■■■ The Bank, in Point of Error No. 4, contends that the trial court erred in allowing the Georges to offer in evidence, over timely objection, their exhibit 18, because the computation contained therein was based on an erroneous legal principle which required the Bank to immediately charge back the $27,000.00 check. Exhibit 18 is a "corrected bank statement" prepared by Mr. Wolford, a Certified Public Accountant, using bank records that were already in evidence. The only difference in the bank statement prepared by the Bank and exhibit 18 is that the balance in the account shown in the exhibit was computed as of the day when the Bank received notice from the Georges that the check would not be paid (October 21, 1968), while the balance reflected in the Bank's own statement was computed as of the date that the Bank actually charged the dishonored checks back to the account (November 18, 1968).

The record discloses that the Bank was notified on October 21, 1968 that payment had been stopped on the $27,000.00 check. The check was returned, and was marked "payment stopped, refer to maker". The record further discloses that the $27,000.00 check was not charged back by the Bank until November 18, 1968, a period of approximately twenty-nine (29) days. During this interval, checks issued to third parties were paid out of the account, even though the Bank was on notice that the check was not going to be honored by the

Georges. Once a bank has received notice that a check has been dishonored, it must exercise its right of charge back promptly. Waiting 29 days before exercising the right to charge back is not a prompt exercise of that right. Exhibit 18 was not based on an erroneous legal principle. The trial court did not err in admitting it into evidence. Point of Error No. 4 is overruled.

In Point of Error No. 9, complaint is made of the failure by the trial court to sustain the Bank's objection to the jury argument by the attorney for the Georges in connection with his argument that the checks should have been charged back at a time other than the time that they were actually charged back. The Bank says that such argument was contrary to law. We do not agree. Furthermore, the jury argument by counsel for the Georges is set out on pages 637 to 666 of the statement of facts. It is not included within the pages which the trial judge certified to be the statement of facts in this case. The jury argument is not properly before us. Point of Error No. 9 is overruled.

In Point of Error No. 10, it is asserted that the trial court erred in refusing to grant a new trial because the jury finding that the Bank did not receive the $27,000.00 check for deposit in good faith (Special Issue 1-a), and the finding that *Mike George* did not have knowledge "that such checks were obtained by Joe Davis in exchange for Joe Davis' kited checks" (Special Issue 8), were so contrary to the undisputed evidence and admissions in the case as to demonstrate that the jury was motivated by bias and prejudice which permeated its answers to each and all of the eleven special issues which were submitted to the jury. We have already held there was ample evidence which supports the jury's findings that the bank did not receive the $27,000.00 check in good faith and without notice. Mike George did not testify. There was no evidence introduced as to what Mike George knew or did not know. There is no admission in the record that Mike George had such knowledge. The jury correctly found that the preponderance of the evidence was that Mike George did not have such knowledge. We have reviewed all of the evidence. We hold that the answer by the jury to the Special Issues 1a and 8 are not so contrary to the evidence and admissions as to demonstrate any bias or prejudice on the part of the jury. Industrial Fabricating Co. v. Christopher, 220 S.W.2d 281 (Tex.Civ.App. —Galveston 1949, writ ref'd n. r. e.). Point of Error No. 10 is overruled.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

The First State Bank & Trust Company of Edinburg, plaintiff-appellant, in its motion for rehearing, contends that the original statement of facts was inadvertently misnumbered by the court reporter. An affidavit from the court reporter who prepared the statement of facts has been submitted by appellant. It reads, in part, as follows:

" . . . I hereby certify that the statement of facts in the above entitled and numbered cause started at Page One (1) of the first bound volume and included all pages thereafter, in both volumes One (1) and Two (2), through Page 710–b of the second volume. That the Judge's certificate certifying the correctness of the statement of facts correctly appears as the next to the last page of the statement of facts, Page 710–a, and that it is certifying the correctness of all pages in the statement of facts through Page 710. That by mistake, the Judge's certificate is numbered Page 609 and the Reporter's certificate is numbered Page 610 in the original statement of facts. I have crossed out those numbers 609 and 610 in

the copies of the statement of facts and written in the numbers 710–a and 710–b in their place, respectively, on the copies, but, apparently, did not do so on the original statement of facts. This change should be made to reflect the correct page numbers of 710–a for the Judge's certificate and 710–b for the Reporter's certificate."

Appellant argues that the affidavit affords a basis for the correction of the original statement of facts, and that the certificate of the trial judge thereon, was, in fact, a certificate that covered the entire record, including the objections to the court's charge and the jury argument. We do not agree. The posture of the statement of facts, fully detailed in the opinion, is not changed by the affidavit.

 A Court of Civil Appeals cannot consider a correction to a statement of facts after it has been filed in the appellate court unless and until the same has been agreed to by the parties or approved by the trial judge. Rules 375, 377, T.R.C. P. A court reporter does not have the authority to alter, change or correct the original statement of facts in any manner whatsoever after the same has been agreed to by the parties or approved by the tiral judge and filed in the appellate court. Only the parties themselves by joint agreement, or the trial judge, in the event of disagreement, have such authority. The affidavit here presented will not be considered as correcting the original statement of facts. There is still nothing before us from either the parties themselves or from the trial judge which states that the objections to the charge and the jury argument, in the form and content set out in pages numbered 611 to 710 in the original statement of facts, were approved by the trial judge as being part of the record which was filed in this Court.

We have carefully considered all of the remaining complaints urged in the motion for rehearing. They are without merit.

The motion for rehearing is overruled.