**PARTEN et al. v. WILSON et al.**

No. 4762.

Court of Civil Appeals of Texas. Beaumont.

Sept. 20, 1951.

Rehearing Denied Oct. 17, 1951.

A. M. Huffman, Beaumont, Grover C. Lowe, Woodville, and Bert E. Derden, Houston, for appellant.

Fisher & Tonahill, Garland Smith, and Ward Markley, all of Jasper, for appellee.

R. L. MURRAY, Justice.

This case was originally brought in the County Court of Jasper County by Jeanette Parten, joined by her husband, C. M. Parten, against Evelyn Wilson and her husband, Ed Wilson, under the provisions of Article 3590, Revised Civil Statutes of Texas, 1925, for the purpose of establishing the plaintiff Jeanette Parten as an heir at law of Nooner Collins, deceased. It was plaintiffs' theory and allegation that Jeanette Parten and Evelyn Wilson were sisters and were the children of George and Ettie Delaney, husband and wife, and that in their early childhood they were taken by Nooner Collins and his wife, Kate Collins, into their home for the purpose of adopting them and under an oral agreement and contract to adopt them, and that under the doctrine of estoppel in pais the said Jeanette Parten became an heir at law of said Nooner Collins, deceased. The defendants filed their answer, consisting of a general denial and special denial that plaintiff had any legal capacity to sue, as she was not a legal heir of the said Nooner Collins, deceased, and alleging that no facts existed that would create estoppel to deny her adoption. After an unfavorable judgment in the County Court, plaintiffs appealed to the District Court of Jasper County. There the case was tried to a jury, and resulted in a judgment upon the jury's verdict in favor of appellees, Evelyn Wilson and her husband, against the appellants, Jeanette Parten and her husband. After their motions for instructed verdict and for judg-

ment non obstante veredicto and for a new trial were overruled, the appellants duly perfected their appeal to this court.

The trial court submitted four Special Issues to the jury. Special Issue No. 1 was as follows: "Do you find from a preponderance of the evidence that Nooner Collins about the year 1912 agreed with Mrs. Ettie Delaney to take Jeanette Delaney into his home and adopt her as his own child?" To this issue the jury answered "No".

Special Issue No. 2 inquired whether Mr. and Mrs. Nooner Collins about the year 1912 took Jeanette Delaney into their home and treated, reared and cared for her as their own child. Special Issue No. 3 inquired whether Jeanette Delaney rendered to Mr. and Mrs. Nooner Collins the love, obedience, affection and duties of a child just as if she had been born to them. Special Issue No. 4 inquired whether Ettie Brown about the year 1912 permanently gave up and surrendered to Mr. and Mrs. Nooner Collins her parental control and custody of Jeanette Delaney. The jury answered all of these Special Issues "No".

The appellants bring their appeal under nine points. The first, second, third, eighth and ninth points all present the argument that there was no issue of fact made by the evidence to submit to the jury and that the uncontroverted evidence of both plaintiffs and defendants was conclusive that Jeanette Parten was placed with Nooner Collins and his wife by her mother, Ettie Delaney, for permanent custody and adoption under an agreement that Jeanette Delaney would be adopted by them, that such evidence conclusively established facts that constitute as a matter of law adoption by estoppel of Jeanette by Mr. and Mrs. Collins, and that said contract and agreement was carried out by the parties, that such evidence established conclusively the relationship of. parent and child between Jeanette and the Collins, and that the verdict of the jury is without support in the evidence.

■■■■ The parties to this appeal are not in dispute as to the law in Texas relating to the doctrine of adoption by estoppel. The appellants cite and quote from prac-

tically all of the Texas authorities relative thereto, beginning with the case of Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72 and ending with Cavanaugh v. Davis, Tex.Sup., 235 S.W.2d 972, 977. The appellees say that all the cases cited are authorities in support of their position on this appeal, that is, that an agreement or contract to adopt is the ultimate issue in the case and must be established by the evidence before an adoption existed or the doctrine of estoppel in pais is applicable. We believe this is correct. In the case of Cavanaugh v. Davis, supra, the opinion by Justice Calvert points out that in no case has the Supreme Court of Texas upheld the adoptive status of a child in the absence of proof of an agreement or contract to adopt. The opinion further stated a proposition which we think applicable to the determination of this appeal, in view of the jury's finding here that no agreement to adopt was made. "The question here is not whether the trial judge could have found the existence of the agreement as alleged from the evidence here summarized but whether he was compelled to do so; not whether the relevant facts and circumstances as established by the acts and conduct of the parties would authorize a logical inference that the agreement did exist but whether such facts and circumstances would permit of no other reasonable inference."

A summary of the evidence must therefore be made. It is shown without dispute that George Delaney and Ettie Dismuke were married in 1908 and had two children, Jeanette born in 1909 and Evelyn born in 1911. Prior to 1912 George Delaney deserted his wife and two children, leaving them without any means of support. In 1912, while Ettie Delaney and her two children were living in Beaumont, Nooner Collins of Jasper, Texas saw Mrs. Delaney in Beaumont and made some agreement with her about taking the two children to his home to raise. In accordance with the agreement, he took the two children to his home in Jasper when Jeanette was about three years of age and Evelyn about one and a half years of age. He and Mrs. Collins reared them in their home, sending them to school and church and treating them in all respects as if they were their own children. They were known by the name of Collins. In the year 1923 Mr. Collins formally and legally adopted Evelyn. Ettie Delaney is now Ettie Brown, wife of R. G. Brown. She made no effort to see her children until about 1922 when she saw them at the school house at Jasper. In 1923 Jeanette left the Collins home and went to Houston, where she lived with her real mother, Mrs. Brown, until her own marriage. In 1923 Mrs. Brown brought suit against Mr. and Mrs. Collins in the District Court of Jasper County for the custody of Evelyn. Judgment in that suit was rendered in favor of the Collins, leaving custody of Evelyn with them. Mrs. Kate Collins died testate in 1942, leaving her property by will to her husband Nooner Collins. Nooner Collins died intestate in 1948. The testimony given by Mrs. Brown was as follows:

"When Mr. Delaney and I separated, Jeanette was about 2½ years old and Evelyn about 1 year old, one born in 1909 and one in 1911. Mr. Delaney never gave me a penny from the time he left me for the children's support. I kept the children with me after we separated as long as I could. They stayed with me until the last part of 1912. I worked in a laundry and paid a lady to keep them in the day time and I kept them at night. I kept them until 1912. I met Mr. Nooner Collins and Mrs. Kate Collins in Brooklyn, Texas, before I was married to Mr. Delaney. I was in their home many times. I never saw Mr. Collins for many years until in Beaumont, I was in a cafe one day, and he came where I was eating. He recognized me. He came over to the table and asked me 'Aren't you the Dismukes' girl?', and I said 'Yes, sir, I am.' He asked about George Delaney who had worked for him in the stave mill. He also asked me where the children were. I told him I was boarding them out. He wanted to know if I didn't want him to adopt them. I didn't consent right then but he made a trip to Jasper, but when he came back, I made an agreement with him that he could adopt the children. Mr. Collins wanted the children to adopt and I told him he could have them to adopt. He said he

wanted to take them and raise them as his own. I continued to work after that and remarried in 1915 and went to Galveston to live. I did not correspond with the girls or see them after that until 1922, about 10 years after Mr. Collins took them. I saw them at the school house in Jasper. On my way from Pineland to Houston, I stopped by the school to see the girls. I saw them just a few minutes. Mrs. Collins got there soon after I did, just a few minutes. It was not agreeable with her for me to see them and she objected to me seeing the children. I left then and Mrs. Collins was still there after I left. She didn't have very much to say. She asked me how I come to visit the children and I told her I wanted to see them. I had tried several times and hadn't been able so I went to the school to see them. I never saw Evelyn again until the court trial here and I saw Jeanette that same year after school was out. That was in 1924. I met her in Beaumont. Mrs. Collins wrote me a letter that she was sending her home to me for a vacation and that I was to meet her in Beaumont. It was just after school was out."

Mrs. Brown's testimony given at the trial of the case involving the custody of Evelyn in 1923 was reproduced and given in evidence in the present trial as follows: "Mr. and Mrs. Collins lived in Brookeland when I was a girl there. I knew of them and had heard of them then. I didn't give these two girls to them. I let them take them to raise as long as they would keep them together and would let me see them at any time I wanted to see them."

The testimony of Mr. Nooner Collins given on the trial of the case involving the custody of Evelyn was reproduced and was in evidence on the trial as follows: "I met Mrs. Brown in Hazel Hoke's house in Beaumont. I first went over there and Mrs. Brown wasn't there. Hazel told me she knew where she was and if I would come back at one o'clock, she would have her there, and I went back over there at one o'clock and she gave me these children, sitting right there in Hazel Hoke's house, and she vowed she would never take them

back. She said she didn't want to separate them. We didn't want but one little girl, and I told her I couldn't take the children until I came home and talked to Mrs. Collins about them. So, I came home and talked to Mrs. Collins and we decided to take them. I found the children down on a houseboat, down there on the Neches River, near the S.P. bridge. I didn't find them the first trip at all. I went back to Beaumont in about two weeks after that. I saw Mrs. Brown that day, and she gave me these kids. She gave me this child, Evelyn Delaney, and the other one. This first time I saw Mrs. Brown, she told me she would give me the children. I told her we didn't really want but one, and I would have to come back and see Mrs. Collins, but Mrs. Brown told us where we would find the children—down on the river."

"I brought the children on home. I have kept the children together constantly since then in my home. I have sent them to school every session, all the time. These children are treated in my home just like they were our own children."

"Since the time that Mrs. Brown gave us these children, she has been refused admission into our home. Mrs. Collins wrote her that on account of her character she could never come into our home."

"I stated that at the time I got these children, it was Mrs. Brown's desire to keep both of them together. As to whether or not it is a fact that Mrs. Brown has never been permitted to go into my home to see these children, I will say, she has been refused permission."

There was also reproduced in the evidence from the testimony in the 1923 trial, a portion of a letter from Nooner Collins to Mrs. Brown, dated September 15, 1923, as follows:

"Furthermore we are going to fight for Jeanette, and I believe that we will keep her, there is no such thing so I am told as a child being given the choice of her real parents or foster parents after they are 14 years old, so long as both their real parents are living, and this applies only when one or other of the child's parents are dead."

Plaintiff Jeanette Parten testified as follows:

"My earliest recollection is of living in Beaumont. I can remember as far back as being on the houseboat. I was kept by someone there. I don't remember who. I was scared of water and I guess that is the reason I remember the houseboat. I do not know how I come to leave the houseboat. I knew Mr. Nooner Collins later but do not remember seeing him at the houseboat. I came to Jasper to live. But I do not know how old I was at that time but I know I was small. I remember making the trip. I remember my mother getting off the train and I cried. I remember her coming with us part of the way to Jasper. My sister, Evelyn, was with me on the trip. We came to Jasper and went to a place in Jasper to live. I lived in Jasper around 11 years. During that time I lived with some other family in Jasper. I lived with Mr. and Mrs. Collins. I lived there from 1912-1923, 11 years. I went to church during that time. Mrs. Collins took me to church. I went to school in Jasper. Jasper High School. I attended every year. I was in the seventh grade. I do not ever remember seeing my father, George Delaney, while I lived at the Collinses. I saw him afterwards when I was put on the train and sent to Beaumont to my mother for the first time in my life. I never went by the name of Jeanette Delaney. During my early childhood I went by the name of Jeanette Collins. That is the only name I ever had. During that time I lived with my sister, Evelyn. She went by the name of Evelyn Collins. We lived in the same house together at Jasper. We went to school together at Jasper. I left Jasper after school was out in 1923. I went to Beaumont where my mother met me and took me to Houston. I went there just on a visit. School was out at that time. I went to Houston with the intention of coming back to Jasper. I did not carry all of my clothes and everything with me. I left them in Jasper. There was no agreement between Mrs. Brown and me as to whether or not I would come back to Jasper. I found out while I was in Houston that I was not coming back. I wanted to come back to Jasper to be with my sister who I had always loved. From the time I left Beaumont to go to Jasper when I was about three years old, I did not see my mother until she came to the school house. That was before I went to Houston to visit her. It was sometime during the school term before I went to Houston. I remember seeing her at the school house on the outside. There was very little said as far as I know. She did not mention me leaving and going with her. She stayed there 5 or 10 minutes. Evelyn was there too. During all the time I lived in Jasper, I could remember having seen my mother. I learned to do housework around the house when I was at Mrs. Collins. I learned to milk cows."

A portion of the testimony of Jeanette given at the custody trial in 1923 was reproduced and placed in evidence in this case as follows: "At one time I lived with Mr. and Mrs. Nooner Collins here at Jasper. I left their home and went to make my home with my mother when school was out in June. I left Mr. and Mrs. Collins because I did not like to live with them; they didn't treat me right."

The testimony of defendant Evelyn Wilson was as follows:

"I have lived in Kirbyville 13 years. Before that time I lived in Jasper with Mr. and Mrs. Nooner Collins. They are my mother and father. I knew they legally adopted me in 1923. I have never known any other father and mother except Mr. and Mrs. Nooner Collins. I went to school in Jasper. Mr. and Mrs. Nooner Collins supported me from 1923 until the time I married. They continued to support me until after I was married and gave me presents and gifts after that time. I remember the time when my sister, Jeanette, left Jasper and went to Beaumont. It was several months after Mrs. Brown came to the school house to see us. It was right after school after she had come there in April, 1923. The sisterly feeling and relations that existed between me and Jeanette was not as it should have been between sisters. While we lived with the Collins we had trouble getting along in that we just didn't play together. When Jeanette left Jasper to go to Beaumont, she left for good. I do not remember her

leaving any clothes at home. She never returned to the home. I saw her to talk to her one time after that. She came to the school house. Someone told me that someone wanted to talk to me and I went out to the car and when I saw it was she and her husband and child, I turned around and went back to the school house. I did not talk to her. I have never talked to her since then and never had any dealings or relationships with her. The day she left to go to Beaumont, she kissed me goodby and said 'I will be seeing you.' She was very happy. She seemed to be elated over going. I do not remember living in Beaumont when I was about 18 months old. I do not remember coming from Beaumont to Jasper. As far back as I can remember, I remember Mr. Collins. I never saw Mr. George Delaney. When Mrs. Brown come to the school house is the first time I found out Mr. George Delaney was my real father and that Mrs. Brown was my mother, that she had given birth to me. That was the first time I knew that Mr. and Mrs. Collins were not my real father and mother. The earliest I can remember was when me and my sister, Jeanette, living in the Collins home, both living there in the home. We both went by the name of Collins, Jeanette Collins and Evelyn Collins. She and I went to school together. We came back home together most of the time. We did not play together often. We continued to live together like that until she left in 1923. We lived there as part of the Collins family in 1923. We called Mr. and Mrs. Collins Mother and Daddy. They called me by my nickname 'Baby' and they called my sister 'Jeanette.' Jeanette and I did work around the house while we were growing up. I picked up papers, straightened up. I could sweep and wash dishes. Anything I wanted to do. I wasn't made to work. Just little things that a child would do for its parents. Jeanette did no more than I did. She did the same work that I did. We had a negro man that did the milking and a colored lady who did the chores around the house. She and I both have fed the cows and fed the chickens. She did also sweep the floors. We had a colored lady who made the beds. We had a maid. I can remember that we did wash the dishes sometime, but, however, we had a maid that did that. Jeanette and I were not made to do the work. We did do about the same kind of work around the house that an ordinary child would do where there are maid servants and men servants around the house. That continued until Jeanette left in 1923 to go to Houston. Jeanette and I had plenty of clothes to wear. The Collins furnished them to us. They treated us nice. We both went to Sunday school and church. We both went to the same church. Mrs. Collins carried us to church when we were small. After we got big enough, maybe I would go to one and Jeanette would go to the other. Mr. and Mrs. Collins were very good to both of us. They were fine folks."

Mrs. Margaret Orton, a witness for the defendants on the trial, testified as follows: "I was in the Collins home a number of times while the two girls lived there. I saw them there. They were treated well by Mr. and Mrs. Collins. They treated them very good. The children were just as kind as possible and seemed satisfied. When I visited in the home the children were doing the normal things that children of that age would do. They were doing about the same things that children of Mr. and Mrs. Collins would be doing if they had any. That is about the limit of it. They were like a happy family there together when I was there so far as I knew. The Collins were good to the children and the children were good to Mr. and Mrs. Collins so far as I know."

We do not agree with the contentions of the appellants that the above testimony is conclusive to the effect that Nooner Collins agreed to adopt Jeanette. The evidence was such that reasonable minds might differ as to whether Nooner Collins made an agreement to adopt the two children. The jury found that issue against the appellants and we do not believe that the findings of the jury in this case should be disturbed. The question here is raised, as is ordinarily true in such cases, when the lips of the alleged adopter have been sealed by death,

and in an effort to establish an interest in property, and such a claim should be received with caution. Before one should be decreed to be an adopted child and heir of another in the absence of compliance with the statute prescribing a simple method of effecting the status, proof of facts essential to invoke the intervention of equity should be clear, unequivocal and convincing. Cavanaugh v. Davis, supra.

We find no error presented in appellants' fourth, fifth and sixth points, which complain of the action of the trial court in submitting Special Issues Nos. 2, 3 and 4 to the jury. Such issues are mentioned above and inquired of the jury whether Mr. and Mrs. Collins took Jeanette into their home and reared her as their child, whether Jeanette rendered to them the love, obedience, affection and duties of a child as if she had been born to them and whether Mrs. Brown permanently surrendered to Mr. and Mrs. Collins her parental control and custody of Jeanette. It was not error to submit these issues, because the evidence raised the fact issues therein submitted. The answers to these three issues could not in any way affect the judgment in this case, in view of the jury's answer to Special Issue No. 1.

The appellants' seventh point complains of the action of the trial court in refusing to permit Jeanette Parten, plaintiff below, to testify in response to questions by her attorneys as to acts and conduct while living in the Collins home and as to services she performed in and about said home, and as to the love and affection she had for her foster parents. We do not believe that the trial court was in error in declining to permit plaintiff to testify to these matters as a witness in her own behalf. She was by her suit claiming to be an heir of Nooner Collins, deceased, by virtue of the doctrine of adoption by estoppel. Any testimony by her as to any of the details of her home life with the Collins family so inquired about would necessarily be to the effect that she was treated as a child in her own home and that she properly responded and so fulfilled her part of the alleged oral contract to adopt her. This we believe is forbidden by the provisions of Article 3716, R.C.S., 1925. At any rate, all of the facts sought to be proved by asking said questions were fully proved by the testimony of Evelyn Wilson on cross examination and established that Jeanette lived the life of a normal child in the Collins home. The error, if any, in excluding the testimony by the appellant was therefore harmless.

The appellants argue that the only evidence in the record that no agreement to adopt was ever made between Mrs. Brown and Mr. Collins was the reproduced testimony of Mrs. Brown, and that since such evidence was received for the purpose of impeachment only, there is no substantive evidence that there was no agreement to adopt. We do not believe that it was required of the defendant in the trial court to disprove plaintiffs' allegations. The impeaching evidence was properly admitted, and could be considered by the jury in deciding whether Mrs. Brown's testimony in the present case ought to be accepted as true. The evidence raised the issue of fact as to whether an agreement to adopt was made, and the jury resolved that question against the appellant.

We believe the case was properly tried and find no error in the judgment, and on authority of Cavanaugh v. Davis, supra, it is affirmed.

Affirmed.