**Guadalupe H. GONZALEZ, Appellant,**

v.

**TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellee.**

No. 1428.

Court of Civil Appeals of Texas, Corpus Christi.

May 3, 1979.

Rehearing Denied May 24, 1979.

James E. Belton, Texas Rural Legal Aid, Inc., Brownsville, for appellant.

Thomas Sullivan, Asst. Dist. Atty., Brownsville, for appellee.

## OPINION

NYE, Chief Justice.

Suit was brought by the Cameron County Child Welfare Unit of the Texas Department of Human Resources (State) to terminate the parent-child relationship between Appellant Guadalupe H. Gonzalez, the natural mother, Tomas Gonzalez and Leonzo de Leon, the living natural fathers,[1] and seven of nine children: John Heath (born February 23, 1963), Martha Heath (born April 3, 1965), Albert Heath (born December 16, 1966), Tomas Gonzalez, Jr. (born January 24, 1970), Robert de Leon (born June 3, 1972), Zulema de Leon (born May 5, 1973), and Maria de Leon (born June 4, 1974).

The State based its suit on Section 15.-02(1)(D) and (2) of the Texas Family Code Ann. (Supp.1979) which provides that:

"A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

\* \* \* \* \* \*

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; . . .

\* \* \* \* \* \*

and . . .

(2) termination is in the best interest of the child."

Appellant answered by filing a general denial, numerous special exceptions and the following two "affirmative defenses": 1) that there were available less drastic alternatives to termination and that the State

---

1. Rolando Heath, father of the children surnamed Heath, died in 1967. Tomas Gonzalez, Sr., one of the natural fathers, executed an affidavit relinquishing his parental rights to his child, Tomas Gonzalez, Jr. Leonzo de Leon, the natural father of the children with the same surname, are the result of a meretricious relationship with the Appellant. de Leon, although duly served with service of process and notification of the hearing, failed to appear. Neither father appeals from the trial court's order terminating his parental rights.

had failed to adequately provide her and her children the welfare, protective and supportive services which would assist her in maintaining and strengthening her family life; and 2) that although she lacked a formal education, had limited financial and economic resources, and was suffering from physical and emotional problems, she had never willfully denied her children the care they needed nor had she intentionally endangered their well-being.

In response to numerous special issues, the jury found: 1) that Appellant had knowingly placed each child in conditions or surroundings which endangered his/her physical well-being; 2) that Appellant had knowingly allowed each child to remain in conditions or surroundings which endangered his/her physical well-being; 3) that termination of the parent-child relationship is in the best interest of each child; 4) that the appointment of the State as managing conservator would be in the best interest of each child.

After the jury verdict, the parties, with the consent of the trial court, entered into an agreement whereby the State agreed not to seek termination of the parent-child relationship between Appellant and the two oldest minor children, John Heath, age 16, and Martha Heath, age 15. Based upon this agreement and the answers to the special issues, the trial court entered a judgment which terminated the parent-child relationship of Appellant and both living natural fathers as to the five youngest children, Albert Heath, Tomas Gonzalez, Jr., Robert de Leon, Zulema de Leon, and Maria de Leon. The court appointed the State as managing conservator of these children. The children have remained in foster homes during the course of this appeal.

Appellant brings forward nine points of error for our consideration. We consider Appellant's complaints concerning the trial court's action in overruling her special exceptions to the pleadings and in refusing to submit to the jury her tendered special instruction, before we address her legal and factual sufficiency points of error attacking the jury's finding and her other constitutional complaints.

In point of error number two, Appellant complains that the district court abused its discretion in overruling special exceptions to the State's original petition because such petition did not allege facts in support of the grounds for termination of the parent-child relationship, thereby depriving her of fair notice of what the State expected to prove and what she had to defend. In point of error number three, Appellant, in a related argument, complains that the application to this case of Section 11.08 of the Texas Family Code resulted in an unconstitutional denial of Appellant's procedural due process of law. These contentions are without merit.

Section 11.08 requires, among other things, that a petition which seeks termination of the parent-child relationship must include "a statement describing what action the court is requested to make concerning the child and the statutory grounds on which the request is made." Tex.Fam.Code Ann. § 11.08(b)(9) (1972). Section 11.14(a) provides that the rules of civil cases generally shall be applicable. Tex.Fam.Code Ann. § 11.14(a) (1972). Rule 45, T.R.C.P., provides, in relevant part, as follows:

"Pleadings in the district and county courts shall   .   .   .

(b) Consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's ground of defense. *That an allegation be evidentiary or be of legal conclusion shall not be ground for objection when fair notice to the opponent is given by the allegations as a whole.*" (Emphasis added).

This rule is consistent with the due process notice requirements outlined by the Supreme Court in *In Re Gault,* 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

Here the State filed an original petition in which the State sought to be appointed the managing conservator of Appellant's children. Later the State filed a pleading captioned "Original Petition for Temporary and Permanent Managing Conservatorship and to Terminate the Parent-Child Relationship." In support of each petition, the

State alleged the statutory grounds contained in Section 15.02(1)(D) and (2) of the Texas Family Code as the basis for termination of the parent-child relationship. In addition, the State alleged that:

" . . . temporary and permanent court orders for the care and protection of the children are necessary for the reasons set forth in the affidavit attached . . ."

The affidavit by Remberto G. Arteaga, Supervisor for the Cameron County Child Welfare Unit stated, in relevant part:

"The children, if required to return to their natural mother, GUADALUPE GONZALEZ, would suffer immediate and irreparable injury for which there is no adequate remedy at law and that their mother is an alcoholic, unemployed and would be unable to provide (1) decent, safe and sanitary housing, (2) adequate parental care and supervision, (3) proper nutritional meals for the children. Therefore, for the safety and welfare of the children, the children should not be permitted to return to their mother, and, in my opinion it would be in the best interest of the children if they were allowed to remain in their present foster homes pending a hearing . . ."

In addition, the State filed a show cause motion which alleged that the statutory grounds which initially supported the State's removal of the children were continuing and that, therefore, the State should continue as managing conservator because:

"1. Respondent has no visible means of support;

2. Respondent has failed to stabilize her home environment, in that, she continues to consort with men who physically abuse her;

3. She continues to deny that any problems existed in the past with respect to the way that she cared for and supervised her children."

Several months later, the Appellant filed an answer which included special exceptions directed toward the allegations contained in the State's pleadings on the basis that such allegations were "vague and general and consist of conclusions of law and do not state the family conditions and circumstances and the specific facts, dates, names and places which support Petitioner's conclusions of law." The trial court overruled Appellant's special exceptions. Contrary to Appellant's assertions, the State did allege more than the statutory grounds for termination as contained in Sections 15.02(1)(D) and (2) of the Texas Family Code. We note that during oral argument, both parties stated that the discovery process under our rules had been utilized. Appellant's points of error numbers two and three are overruled.

By her points of error numbers four and five, Appellant complains: 1) that there is insufficient evidence to show that there exists a present danger to the physical well-being of the children; and 2) that the trial court abused its discretion in refusing to submit the following special instruction requested by Appellant:

"In connection with the Special Issues, you are instructed that termination may not be based solely upon conditions which existed in the past but no longer exist. Before termination of the parent-child relationship can be ordered, it must be shown that the grounds upon which termination is being sought presently exist."

The trial judge refused to submit the special instruction. Appellant moved for a directed verdict and a judgment notwithstanding the verdict on the basis that there was insufficient evidence to show that there existed a present danger to the physical well-being of the children. These motions were overruled.

Rule 277, Texas Rules of Civil Procedure, requires the Court to "submit such explanatory instructions and definitions as shall be proper . . ." An instruction is "proper" if it finds support in the evidence and the inferences to be drawn therefrom, and if it might be of some aid or assistance to the jury in answering the issues submitted. *First State Bank & Trust Co. of Edinburg v. George,* 519 S.W.2d 198 (Tex.Civ.App.— Corpus Christi 1974, writ ref'd n.r.e.); *Mejia*

*v. Liberty Mutual Ins. Co.,* 544 S.W.2d 690 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). The trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. We do not find that the trial judge abused his discretion in this regard. See: *Spradling v. Williams,* 553 S.W.2d 143, 145 (Tex.Civ.App.—Beaumont 1977), aff'd 566 S.W.2d 561 (Tex.Sup.1978); *McCane Sondock Detective Agency v. Penland Distributors, Inc.,* 523 S.W.2d 62 (Tex.Civ.App. —Houston [14th Dist.] 1975, no writ); *First State Bank & Trust Co. of Edinburg v. George,* 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

Appellant's only specific objection to the court's charge was to the effect that the special issues (because they merely "tracked" the vague, overbroad, etc., language of the statutory grounds for termination), violated Appellant's constitutional rights in several respects. Other complaints concerning the form of the special issues as submitted were waived. *Allen v. American National Ins. Co.,* 380 S.W.2d 604 (Tex.Sup.1964); *Texas Employers Ins. Ass'n v. Nueman,* 379 S.W.2d 295 (Tex.Sup.1964). The issues, as submitted to the jury, did require the jury to make a judgment as to the present conditions of Appellant and of the children. For example:

> "Do you find, from a preponderance of the evidence, that termination *is* in the best interest of the children, or any of them." (Emphasis added).

The special issues directed the jurors' attention to the ultimate issues of the case. Appellant's points of error numbers four and five are overruled.

In point of error number eight, Appellant brings forward a "legal sufficiency" point as to the jury findings relating to the three youngest children by complaining that the trial court erred in entering a judgment which terminated the parent-child relationship between her and Robert, Zulema and Maria because there is "no evidence" to support a finding that Appellant either knowingly placed or knowingly allowed these three youngest children to remain in conditions or surroundings which endangered their physical well-being. In point of error number nine, Appellant complains of the jury's findings as to all five children on "factual sufficiency" grounds.

At the outset we recognize that actions which break the ties between a parent and child " 'can never be justified without the most solid and substantial reasons.' " *State v. Deaton,* 54 S.W. 901 (Tex. Sup.1900). First, there is the strong presumption that a child's foremost interest is usually best served by keeping custody in and with the natural parents. This is based on a logical belief that the ties of the natural relationship of parent and child ordinarily bring about strong assurances and genuine efforts on the part of the custodians to provide the child with the best of care and most beneficial opportunities possible. Usually, the best atmosphere for mental, moral and emotional development of the child is with its natural parent. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.Sup. 1976), citing *Mumma v. Aguirre,* 364 S.W.2d 220 (Tex.Sup.1963). See and compare: *Sanchez v. Texas Department of Human Resources,* 581 S.W.2d 260 (Tex.Civ.App.—Corpus Christi 1979, no writ).

The standard of our review of legal and factual sufficiency points of error which attack the findings made by the trial judge or jury in an involuntary termination proceeding pursuant to the Texas Family Code is governed by the same general rules applicable to other civil cases. See e. g., *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.); *In re E. S. M.,* 550 S.W.2d 749, 752 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Thus, in deciding the "legal sufficiency" point, we review the evidence only in the light most favorable to support the jury's findings, and in deciding the "factual sufficiency" point, we must consider all of the evidence. See *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate,* 244 S.W.2d 660 (Tex.Sup.1951); *In re E. S. M.,* 550 S.W.2d 749 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

First, we consider the legal sufficiency point. Frank DeGeer, a child welfare worker for the State, testified that he had been assigned to the Gonzalez case for approximately a two-year period which commenced in May, 1975, after the State had received complaints that Appellant had been leaving her children at home alone. During this period of time, he stated that he made 18 to 20 visits to Appellant's home. On the date of the first home visit in 1975, DeGeer stated that he found, alone and without adult supervision, the school-age children, Richard Roy,[2] Martha, Albert and "another eight year old" who "might have been Tomas." DeGeer stated that a telephone call from a neighbor who "was concerned because just one of the children was there alone" prompted further home visits. Later, he made a visit to the school attended by the school-age children to talk with the school nurse. He stated that "a home visit was made that same day and the children were alone." Appellant was not present at her home the following day either. On this day, DeGeer discovered that the children were with a neighbor, Mrs. Guerrero, who was the godmother of the Appellant's children surnamed Heath. Appellant had not made prior arrangements with Mrs. Guerrero to have her look after the children. DeGeer found it necessary to take one of the older children with him back to the Gonzalez home in order to obtain clean clothing for the youngsters. DeGeer testified that, while he was in Appellant's home, he noticed that the toilet could not be flushed without using a bucket of water; the electricity and gas were turned off; there was no food in the pantry or closets; the house was in a filthy and unkept manner; and the refrigerator had no food—"Just a few cockroaches."

In March DeGeer testified that he found John home alone. John told him that he was not in school because he didn't have any shoes. DeGeer stated that he took John to school where he obtained shoes for him from the nurse's office. During the time he was in the nurse's office, DeGeer stated that Albert, John's brother, was brought into the office because he was crying and disturbing the rest of the children. DeGeer further testified that, quite by coincidence, another brother, Tomas was also brought into the office a short time later because Tomas was being sullen and uncooperative in the classroom. Tomas refused to talk with anyone present. The next day DeGreer stated that he and Remberto Arteaga, the present welfare supervisor, made a visit to the Gonzalez home during school hours. They discovered that no one was at home and the door was not locked. DeGeer stated that an inspection revealed the absence of food and no utilities in the home. In April, he made another visit to the Gonzalez home in response to a complaint by Mrs. Guerrero, and found John again at home alone.

Olivia Guerrero testified that she was the godmother of Richard Roy, John, Mary and Martha and that she had known Appellant only through the children for the past six years. She stated that when she initially knew the children, they would come over to her home and visit. The visits became more and more frequent. By the end of the six-year period, they were coming to her home almost every day, sometimes staying two or three days in a row. Guerrero stated that Appellant had requested her to babysit with the children on only one occasion, and that was the night before the children were taken from the Appellant. When the children came to visit, she stated that they usually did not bring any clean clothes or food and were generally dirty. When the children came to her home, they usually only told her that their mother was not at home; that she was either with Mr. de Leon or that they did not know where she was.

DeGeer made a visit to the Guerrero home at Mrs. Guerrero's request. Two school-age children, Albert and Tomas, and the three pre-school children, Robert, Zulema and Maria, were there. Mrs. Guerrero explained that the Appellant had requested her to take care of the children the previous

---

2. The State dismissed the termination suit as to Richard Roy prior to trial.

night, promising to return the following day by 8:00 a.m. so that Mrs. Guerrero could go to work. She called because there was no one else to supervise the children. DeGeer stated that the children appeared as though they had not bathed for quite some time, their clothes were dirty and "they were lice-ridden." DeGeer stated that he went to the Gonzalez home to obtain some clean clothing for the children. Upon his arrival, he found that the house was unlocked, that the utilities were still off, and that there was no food in the home. DeGeer testified that the children never seemed to know where their mother was when he asked about her absences. He stated that during the time he was working with the family, the housing condition deteriorated, became more unsanitary and the house sometimes smelled of urine.

Dr. Antonio Diaz, a specialist in family medicine, testified that he examined Albert who was then 9 years old. Diaz stated that Albert weighed fifty pounds, which placed his weight at only the third to fifth percentile of children his age (i.e., 95 to 97% of children nine years of age weigh more than 50 pounds), and his height was only at the tenth percentile. Diaz further stated that Albert was uncommunicative. His examination revealed that Albert had lice and showed signs of "failure to thrive." Dr. Diaz stated that his last visit with Albert was after Albert had been placed in foster care. He described the child's progress as far as his weight, health and emotional state to be good.

Dr. Diaz testified that when he examined Tomas, a six (6) year old boy, he found that Tomas was suffering from scabies, a parasite that burrows under the skin. He testified that the scabies had created sores on Tomas' body which had become secondarily infected. He further found Tomas to be infected with lice and internal parasites. Tomas' weight (42 pounds) was at the 40th percentile for children his age, while his height (44 inches) was only at the 7th to 10th percentile. Dr. Diaz stated that the medical condition of the children was consistent with a history of parental neglect. The evidence in the record showed that all of the children suffered from lice.

Dr. Michael de Socarrez, who holds a Ph.D. in psychology, testified that the Appellant was a woman of normal intelligence, but nevertheless suffered from a brain dysfunction which was a result of a brain trauma. Although the exact cause of the trauma could not be identified, he calculated the condition with a history of drinking and physical abuse. He testified that she tended to relate to others in a self-destructive manner. She had experienced an early history of emotional abuse and lack of warmth. As a result, the Appellant was unable to sustain long relationships. She related to men primarily through physical sex. On the basis of his evaluation, de Socarrez further stated that Appellant "is unable to meet the needs of her children in regard to emotional warmth, caring and protection, protection in every sense of the word." The doctor's prognosis for Mrs. Gonzalez was "guarded." The prognosis for her learning to care appropriately for her children was nil. He did not believe that there was a program of psychotherapy, psychoanalysis or counseling which could provide the structure in which Mrs. Gonzalez could learn how to provide for her children adequately, emotionally and lovingly.

Mrs. Elias Salinas, a foster parent of Tomas, testified that when Tomas arrived at their home on April 15, 1976, he had lice, sores on his body and infected sores on his buttocks. Tomas was wearing dirty shorts and torn tennis shoes which did not fit. She stated that Tomas did not remember ever eating an egg. She described his health as improved: "being much better now." He had gained weight and had "grown up," she said. She stated that Tomas calls her and her husband "Mamma" and "Daddy."

Esmeralda Rodriguez, a foster parent of Albert, testified that at the time Albert (10 years of age) arrived at their home, on April 15, 1976, he was slim and his stomach was protruding. She also stated that he had lice which took over three months to clear up by shampooing every day. She

stated that he initially was somewhat uncoordinated, stumbled easily and had trouble in school; that he did not know his right hand from his left; and did not know the alphabet. She described him now as being much taller, healthy, and more conversant.

Bluford Bradford Hester, III, a child placement worker for the State, testified his duties included investigating reports of abuse and neglect, working with families which are having problems and working with foster children. He testified that he was assigned to the Gonzalez case in October, 1976. During his first visit with Mrs. Gonzalez, which occurred in October, 1976, Appellant informed him that she was living with a friend or relative because her utilities were out at her home. Appellant showed Hester her accumulated utility bills which showed an overdue and unpaid amount of approximately $1,000.00. Hester stated that the basic utility bill had been in the neighborhood of $300.00 or $400.00 and that the remainder was due to finance charges imposed for non-payment. Hester stated that Appellant's utilities were turned on sometime in the spring of 1977 and remained on for approximately a year. In March, 1978, Hester stated that the utilities were again turned off due to non-payment and they remained off until sometime in May or the first part of June in 1978.

Hester testified that Appellant had no formal education, no prior job experiences and no special vocational job training. He described her most recent employment as that of a bar-maid at several different locations. It was undisputed that, prior to the time the children were removed, Appellant's sources of income were social security benefits that she and the surnamed Heath children received. She also received aid to families with dependent children for Tomas Gonzalez, Jr., plus food stamps, for a total of approximately $500 to $600 per month. Mr. de Leon had paid her past due utility bill and provided some support payments for the children with the surname of de Leon. Appellant's home had been paid for from the proceeds of an insurance policy when her first husband died. The title to the house had been placed in the name of

the Heath children. Hester testified that Appellant requested a visit with one of her sons who was in the South Texas State School in Edinburg and, at the same time, asked whether there would be any excess over his allowance for that particular month. He informed Appellant there probably would be an excess, but that it would take some five to six weeks for the necessary paperwork to be completed before she could receive such excess. He testified that she seemed disappointed at this response and subsequently cancelled her visitation trip.

■ There is ample probative evidence, both circumstantial and direct, to support the jury's findings as to each child. See *Larson v. Ellison,* 147 Tex. 465, 217 S.W.2d 420, 421 (Tex.Sup.1949). Appellant's point of error number eight is overruled.

In addition to the evidence discussed above, we have reviewed the entire record and find that the jury's answers are not against the great weight and preponderance of the evidence. See *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex. Sup.1951). There is ample evidence in the record from which the jury could reasonably conclude that Appellant knowingly placed or knowingly allowed all of the children to remain in conditions or surroundings which endanger their physical well-being. The jury is not only the judge of the facts and circumstances proven, but they are the judge of the credibility of the witnesses. They are at liberty to draw reasonable inferences and deductions from the evidence adduced at trial. *Lynch v. Ricketts,* 314 S.W.2d 273 (Tex.Sup.1958); *Clark v. Brewer,* 498 S.W.2d 957, 959 (Tex.Civ. App.—Corpus Christi 1973, no writ). Appellant's point of error number nine is overruled.

■ In point of error number one, Appellant complains that Section 15.02(1)(D) is void for vagueness and is unconstitutional on its face, and as applied to her. We have recently considered the precise same contention that Section 15.02(1)(D) of the Texas Family Code is void for vagueness in

*Sanchez v. Texas Department of Human Resources,* 581 S.W.2d 260 (Tex.Civ.App.—Corpus Christi 1979, no writ), and found that contention to be without merit. The record in this case does not support Appellant's contention that Section 15.02(1)(D) is unconstitutional as it was applied to her. Appellant's point of error number one is overruled.

In points of error numbers six and seven, Appellant complains that the trial court erred by refusing to admit into evidence certain testimony of Remberto Arteaga, Supervisor of the Cameron County Child Welfare Unit of the Texas Department of Human Resources. After the State rested its case, counsel for Appellant recalled Mr. Arteaga and attempted to elicit certain testimony allegedly relevant to Appellant's "affirmative defense" that termination of the parent-child relationship was not the least drastic remedy available to the State. During the course of direct examination of Mr. Arteaga, the trial court refused to hear testimony by sustaining relevancy objections to the following three areas of inquiry:

1. (Counsel for Appellant): "And I believe you testified earlier that these policies and procedures of the [State] are contained in the Social Service Manual, is that correct?

(Arteaga): Yes.

(Counsel for Appellant): Are you familiar with this manual?

(Arteaga): Yes, ma'am.

(Counsel for State): I am going to object to the constant reference to the material that pertains to the operations of the Department. I don't see the specific relevance to this case.

(Court): Objection will be sustained.

\* \* \* \* \* \*

2. (Counsel for Appellant): [In light of the witnesses' previous testimony], can you tell me, speaking again for the [State], how serious a matter is removal of a child from its home?

(Counsel for State): I object on the same basis, Your Honor, relevancy.

(Court): Sustained. That is for the jury to decide.

\* \* \* \* \* \*

3. (Counsel for Appellant): Mr. Arteaga, how many other cases have you been involved in where termination is sought?

(Counsel for State): We'll object to that on the same basis, relevancy.

(Court): Sustained."

The trial judge granted Appellant's request to make a formal bill of exceptions concerning the excluded testimony.

The formal bill of exceptions, including exhibits attached thereto, comprises 74 pages in the supplemental transcript. Nowhere in the bill of exceptions is evidence concerning the areas of inquiry two and three above. Most of the substance of Mr. Arteaga's testimony contained in the bill of exceptions is a summary of his own prior testimony or a summary of other witnesses' prior testimony which had been introduced into evidence without objection. The bill of exceptions does contain the following statements which Appellant did not specifically attempt to introduce through Arteaga's testimony during the trial: 1) the family of Appellant, "at all times pertinent hereto, [was] experiencing a 'protective situation' as that term is used throughout the Social Services Handbook;" 2) Appellant "and her family were at all pertinent times hereto qualified for the services available through Cameron County Child Welfare Unit to families experiencing protective situations;" and 3) the Cameron County Child Welfare Unit was able to provide eight enumerated services to families experiencing "protective situations." Attached to the bill of exceptions as exhibits were copies of: 1) "various pertinent sections of the 'Social Services Handbook' as those sections existed from and after the date shown on each page;" and 2) "copies of 'Article 695c § 18A(1), V.A.T.S.; 42 U.S.C. §§ 601, 602(a), 622(a); 45 C.F.R. §§ 220.1–220.40, [which would have been offered into evidence]." These exhibits comprise 71 pages of the bill of exceptions.

**532**

As a general rule, error is not shown in the exclusion of evidence unless the Appellant brings before the appellate court a record that shows clearly not only what the evidence would have been if admitted, but also its relevancy. *Kieffer v. Miller,* 560 S.W.2d 431 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.); *Swinney v. Winters,* 532 S.W.2d 396 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); *Victoria Comfort Air Co. v. Alamo Express,* 529 S.W.2d 250 (Tex.Civ.App.—Corpus Christi 1975, no writ). The complaining party has the burden to show reversible error by demonstrating that the exclusion of evidence was reasonably calculated to and probably did cause the rendition of an improper verdict or judgment. *Gomez Leon v. State,* 426 S.W.2d 562 (Tex.Sup.1968); *Ryder Tank Lines, Inc. v. Bentley,* 397 S.W.2d 914 (Tex. Civ.App.—Fort Worth 1965, writ ref'd n.r. e.). Reversible error is not present where the substance of the excluded testimony is cumulative or has been previously introduced through that witness or another witness. *Brazos Graphics, Inc. v. Irvin Industries, Inc.,* 22 Tex.Sup.J. 309 (Tex.Sup. April 18, 1979); *Hopkins v. Clark,* 20 Tex. 64 (Tex.Sup.1857); *Yancey v. Olvera,* 518 S.W.2d 935 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.); *Sanchez v. Billings,* 481 S.W.2d 911 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Parten v. Wilson,* 243 S.W.2d 198 (Tex.Civ. App.—Beaumont 1951, writ ref'd n.r.e.).

Error is not shown by the exclusion of evidence which previously had been introduced. The remainder of Arteaga's testimony and the Handbook (Exhibit "A") contained in the bill of exceptions is of such a general nature that we fail to see its relevancy. No effort has been made to tie Arteaga's testimony with any specific sections of the attached Handbook, nor to any of the other attached exhibits. We conclude that Appellant has failed to show that the exclusion of this evidence was error or if we could say that it was error, Appellant has failed to demonstrate that such error was reasonably calculated to and probably did cause the rendition of an improper judgment in this case. Rule 434, T.R.C.P. Ap-

pellant's points of error numbers six and seven are overruled.

The judgment of the trial court is AFFIRMED.